FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

_Jacksonville_ Division

200b FEB -b P 3: 34

**CIVIL RIGHTS COMPLAINT FORM**

Nicholas v Ciccone B-124788

CASE NUMBER: 3:06-cv-116-J-32mm H
(To be supplied by Clerk's Office)

(Enter _full name_ of each _Plaintiff_ and prison
number, if applicable)

v.

U. SAPP, R. Solorzano, R. Feltner
D. Hall, M. Dela-CERRa, U. ZAK,
C. Hudgins

(Enter _full name_ of each _Defendant_. If
additional space is required, use the blank
area directly to the right).

## ANSWER ALL OF THE FOLLOWING QUESTIONS:

I.   PLACE OF PRESENT CONFINEMENT: Hamilton Correctional
     (Indicate the name and location)
     Facility 10650 S.W. 46th St Jasper, Fla 32052

II.  DOES YOUR COMPLAINT CONCERN EVENTS IN A STATE PRISON FACILITY WITHIN
     THE FLORIDA DEPARTMENT OF CORRECTIONS? Yes (✓) No ( )

     [If your answer is YES, after reviewing the exhaustion requirements, answer the following
     questions].

DC 225 (Rev. 9/03)

EXHAUSTION OF ADMINISTRATIVE REMEDIES: Pursuant to the Prison Litigation Reform Act or 1995, Title VIII, Section 803 Amendments to Civil Rights of Institutionalized Persons Act, exhaustion of administrative remedies is required in any action brought with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility.  Any required grievances, appeals, and responses must be submitted to the Court to verify exhaustion.  (If your Complaint concerns conditions at state prison facilities, you must answer the following questions in Section II of this form.  If the Complaint concerns conditions at a county jail or local correctional facility, you must complete Section III of this form.)

EXHAUSTION STEPS ORDINARILY REQUIRED FOR COMPLAINTS ABOUT CONDITIONS AT STATE PRISON FACILITIES:

General Grievance

   1.  Informal Grievance (Form DC3-005)
   2.  Formal Grievance (Form DC1-303)
   3.  Appeal to the Office of Secretary (Form DC1-303)

Other Grievance

Inmates are not required to utilize the informal Grievance process in the case of an emergency grievance, a grievance of reprisal, a grievance of a sensitive nature, a grievance alleging violation of the Americans with Disabilities Act, a medical grievance, a grievance involving admissible reading material, a grievance involving gain time governed by rule 33-11.0065 Incentive Gain Time, or a grievance involving disciplinary action (does not include corrective consultations) governed by chapter 33-22.  The grievance steps are set forth in Fla. Admin. Code Chapter 33-29.

Questions:

A.    Emergency Grievance, Grievance of Reprisal, or Grievance of a Sensitive Nature, Grievance Alleging Violation of the American with Disabilities Act, Medical Grievance, Grievance, Grievance Involving Admissible Reading Material, Grievance Involving Gain Time Governed by Rule 33-11.0065 Incentive Gain Time, or Grievance Involving Disciplinary Action Governed by Chapter 33-22 (Request for Administrative Remedy or Appeal, bypassing the informal grievance step).

   1.  Did you submit an above-mentioned grievance to the Superintendent and/or to the office of Secretary (Form DC1-303)? Yes (√) No ( )

   2.  If so, you must attach a copy of the grievance and response to this Complaint form.

   3.  Were you denied emergency status? Yes (√) No ( )

        a.  If so, did you go through the informal grievance, formal grievance and appeal process? Yes (√) No ( )

        b.  If so, you must attach copies of the grievance/appeals and responses to this Complaint form.

B.    Informal Grievance (Request for Interview)

1.  Did you submit an informal grievance (Form DC3-005)? Yes (✓) No (  )

2.  If so, you must attach a copy of the grievance and response to this Complaint form.

C.  <u>Formal Grievance</u> (Request for Administrative Remedy or Appeal)

1.  Did you have a disciplinary hearing concerning this matter? Yes (  ) No (✓)

2.  If so, you must attach a copy of the disciplinary report and disciplinary committee's findings and decision to this Complaint form.

3.  Did you submit a formal grievance (Form DC1-303)? Yes (✓) No (  )

4.  If so, you must attach a copy of the grievance and response to this Complaint form.

D.  <u>Appeal to the Office of the Secretary</u> (Request for Administrative Remedy or Appeal)

1.  Did you submit an appeal to the Office of the Secretary (Form DC1-303)? Yes (✓) No (  )

2.  If so, you must attach a copy of the appeal and response to this Complaint form.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING ANSWERS TO THE QUESTIONS IN THIS SECTION ARE TRUE AND CORRECT.

Signed this _1ST_ day of _February_, 2 006.

_Nicholas V Ciccone_
Signature of Plaintiff

III.   **DOES YOUR COMPLAINT CONCERN EVENTS IN A COUNTY JAIL OR LOCAL FACILITY?** Yes ( ) No ( ✓)

If your answer is YES, answer the following questions.

A.   Is there a grievance procedure at your institution or jail?  Yes ( ) No ( )  N/A

B.   Did you present the facts relating to your Complaint in the grievance procedure?  Yes ( ) No ( )  N/A

C.   If your answer is YES:

1.   What steps did you take?  _N/A_____

_____

2.   What were the results?  _N/A_____

_____

3.   To demonstrate exhaustion, you must submit copies of all relevant grievances/appeals and responses.

D.   If your answer is NO, explain why not:  _N/A_____

_____


I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING ANSWERS TO THE QUESTIONS IN THIS SECTION ARE TRUE AND CORRECT.

Signed this _1st__ day of _February_____, 2006____.


_____
Signature of Plaintiff

IV.   **PREVIOUS LAWSUITS:**

A.   Have you initiated other lawsuits in <u>state court</u> dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof? Yes ( ) No (✓)

B.   Have you initiated other lawsuits in <u>federal court</u> dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof? Yes (✓) No ( )

C.   If your answer to either A or B is YES, describe each lawsuit in the space provided below. If there is more than one lawsuit, describe all additional lawsuits on a separate piece of paper, using the same format as below.

   1.   Parties to previous lawsuit:

   Plaintiff(s): Nicholas v Ciccone B-124788

   Defendant(s): J. Sapp, J. Hudgins, C. Faulk, N. Collins, D. Hoover

   2.   Court (if federal court, name the district; if state court, name the county): Middle District of Florida, Jacksonville Division

   3.   Docket Number: 3:05-CV-1028

   4.   Name of judge: Unknown

   5.   Briefly describe the facts and basis of the lawsuit: The Plaintiff was placed in confinement for filing a Grievance, Defendants' violated Plaintiff's 1st and 14th Amendment Constitutional Rights.

   6.   Disposition (Was the case dismissed? Was it appealed? Is it still pending?): Still Pending

   7.   Approximate filing date: 10/11/05

   8.   Approximate disposition date: N/A

D.   Have you initiated lawsuits or appeals from lawsuits in federal court that have been dismissed as frivolous, malicious or for failure to state a claim upon which relief may be granted? If so, identify theses suits below by providing the case number, the style,

and the disposition of each case:

N/A

V.   PARTIES:  In part A of this section, indicate your full name in the first blank and your full mailing address in the second blank.  Do the same for each additional Plaintiff named in the Complaint (if any) in part B of this section:

A.   Name of Plaintiff: NICHolAs v Ciccone B-124788

Mailing address: Hamilton Correctional Facility
10650 S.W. 46th ST. Jasper Fla

B.   Additional Plaintiffs: N/A

In part C of this section, indicate the **full name** of the first named Defendant.  Also, fill in his or her mailing address, position, and where he or she is employed.  For any additional Defendants, use parts D through G of this section for the names, addresses, positions and places of employment:

C.   Defendant: J. Sapp

Mailing Address: 10650 S.W. 46th ST
Jasper, Fla 32052

Position: WARDEN

Employed at: Hamilton Correctional

D.   Defendant: R. Solorzano

Mailing Address: 10650 SW 46th ST Jasper Fla 32052

Position: Chief Health officer

DC 225 (Rev. 9/03)                                    6

Employed at: HAMILTON CORRECTIONAL

E. Defendant: R. FEITNER

Mailing Address: 10650 S.W. 46th ST

NASPER, Fla 32052

Position: SENIOR HEALTH ADMINISTRATOR

Employed at: HAMILTON CORRECTIONAL

F. Defendant: D. HALL

Mailing Address: 10650 S.W. 46th ST

NASPER, FLA 32052

Position: STAFF PHYSICIAN

Employed at: HAMILTON CORRECTIONAL

G. Defendant: M. DELACERNA

Mailing Address: 10650 S.W. 46th ST

NASPER, Fla 32052

Position: STAFF PHYSICIAN

Employed at: HAMILTON CORRECTIONAL

H. Defendant: J. ZAK

ADDRESS: 10650 S.W. 46th ST NASPER, Fla 32052

Position: NURSE

Employed at: HAMILTON CORRECTIONAL

I. Defendant: C. HUDGINS

Address: 10650 S.W. 46th ST NASPER, Fla 32052

Position: NURSE

Employed at: HAMILTON CORRECTIONAL

VI.   **STATEMENT OF CLAIM**:  State what rights under the Constitution, laws, or treaties of the United States have been violated, and be specific.  If you intend to allege a number of related claims, set forth each claim in a separate paragraph.  Any claim that is not related to the same basic incident or issue must be addressed in a separate Civil Rights Form.

THE Plaintiff states a claim under THE 8th AND 14th Amendment of THE United States constitution As Well As Article I Section 9 AND 17 oF THE Florida Constitution WHEN THE Defendants violated His Due Process RighT To Adequate Medical Treatment WHICH ACCRUED INTO THE 12 Weeks oF THE WANTON AND UNNecessary INfliction of Pain.

VII.   **STATEMENT OF FACTS**:   State as briefly as possible the FACTS of your case. Describe how each defendant was involved.  **Do not make any legal arguments or cite any cases or statutes.**   State with as much specificity as possible the facts in the following manner:

1.  Name and position of person(s) involved.
2.  Date(s).
3.  Place(s).
4.  Fact(s) or event(s) giving rise to your claim, including involvement of each defendant.
5.  Nature and extent of injury (*i.e.*, physical injury or how you were harmed by the acts of the defendant(s)).

IN February of 2005 THE Plaintiff CONTRACTED A CONTAGIOUS Skin Disease know As SCABIES. THE Plaintiff's First Recorded visiT To medical WAS ON February 24th, 2005 To Be seen By NURSE C. HUDGINS. THE Plaintiff WAS initially Treated for HIS CONDITION on March 3rd 2005 by STAFF PHYSICIAN O. HAll. THE Plaintiff's First TREATment WAS UNSuccessful. THE MEDICATION USED IS known AS PERMETHRIN. ON THE TUBE OF THE CREAM IT Clearly STATES: "ONE APPLICATION IS Generally CURATIVE."

Statement of Facts, continued:

THE Plaintiff MAINTAINS THAT AFTER HIS FIRST TREATMENT HE REPORTED BACK TO MEDICAL ON NUMEROUS OCCASIONS AND INFORMED THE MEDICAL STAFF HIS CONDITION WAS GETTING WORSE. THE PlaintIFF WAS SEEN ON NUMEROUS OCCASIONS BY NURSE J. ZAK. IT TOOK 2 WEEK FROM THE INITIAL TREATMENT FOR THE Plaintiff TO SEE STAFF PHYSICIAN D. HALL AGAIN WHO STATED: "YOU WILL HAVE TO WAIT 2 MONTHS TO BE RETREATED BECAUSE THE MEDICATION IS TOXIC AND IT CAN KILL YOU" THE PlaintIFF AVERS THAT IN THE PHYSICIANS Desk Reference IT CLEARY STATES THAT "Demonstrable living MITES AFTER 14 DAYS INDICATE RETREATMENT IS NECESSARY" THE Plaintiff WILL INCORPORATE A Photocopied Page FROM THE PHYSICIANS Desk Reference IN HIS Memorandum of Law. THE Plaintiff's MEDICAL RECORDS CLEARY REFLECT THE PHYSICIAN STATING RETREATMENT WOULD HAVE TO WAIT 2 MONTHS. THE Plaintiff's MEDICAL RECORDS ALSO REFLECT 16 RECORDED VISITS TO MEDICAL IN WHICH HE WAS REPEATEDLY SEE BY NURSES C. HUDGINS AND J. ZAK. THE PlaintIFF REPORTED TO MEDICAL ON February 24th 2005 INITIALLY AND WAS NOT PROPERLY TREATED UNTIL MAY 26th 2005 12 WEEKS LATER. THE Plaintiff ON NUMEROUS OCCASIONS WAS SENT TO MEDICAL BY LT. HERRING, CAPT. BAKER, SGT. Allen, OFFICER Voyles, CAPT. YMANN AND OTHER SECURITY

**Statement of Facts, continued:**

Personnel Because so many Inmates Were complaining of him in open population constantly scratching and having open sores and scabs all over his body But medical Repeatedly sent Him away. On several occasions The Plaintiff was told by Nurses J. Zak and C. Hudgins "You'll Just have to Wait" OR That "There is Nothing we can do" The Plaintiff suffered immensely because scabies are Nocturnal and He could not sleep at Night. The Plaintiff Filed a Total of four Grievances; Three at the Institute and they were Reviewed and signed by: The Warden-J. Sapp, Chief Health officer-R. Solorzano, And Senior Health Administrator-R. Fettner. All of These officials completely ignored the Plaintiffs' Serious medical Condition, Staff Physician-M. Dela-ceeng Also had full knowledge of the Plaintiff's condition by Reviewing His medical file on March 22nd, 2005. The Plaintiff's father had to contact the Hamilton Co. Health Dept. In order To Achieve any Results to have Him Treated. The Plaintiff suffered Through Twelve weeks of sleepless Nights Endlessly Crying in Pain, with scabs and sores all over his body and Noone Would Acknowledge his Condition. The Plaintiff has incorporated his medical Record for Reference.

VIII.   <u>RELIEF REQUESTED</u>:   State briefly what you want the Court to do for you.  Again, do not make any legal arguments or cite any cases or statutes.

THE Plaintiff seeks compensatory damages in the amount 50,000 dollars against each of the Named defendants in this Claim As well As Punitive Damages in the Amount The court deem Just And Proper To compensate Him for Pain and Suffering, mental Anguish, embarrassment And Humiliation suffered by Him due to the Lack of Concern for His serious medical needs which each of the defendants had full Knowledge of.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Signed this ___1 st___ day of ___February___, 2 __006__.

_____ 8124788

_____

_____

(Signatures of all Plaintiffs)

**INMATE REQUEST**

*Informal Grievance*

**STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS**

**(Instructions on Back)**

Mail Number: _____
Team Number: _____
Institution: _____

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☑ Medical ☐ Dental | ☐ Other *MRS. HUDGINS* |
|---|---|---|---|---|

| FROM: | Inmate Name *Ciccone* | DC Number *124788* | Quarters *E114L* | Job Assignment *Vacation* | Date *5/10* |
|---|---|---|---|---|---|

**REQUEST**

Mrs. Hudgins,
On 5/8/05 I went to sick call
And told them I felt like I still had scabbies
And showed the nurse on duty the red spots.
And I was put over to see the doctor again.
Why was I charged again for this?
This is the second time I was charged for
A problem that I was already seen for
before! Also I would just like to add that I
do feel like they are still crawling under my
skin especially on my feet And hands - Thank you

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**

DATE RECEIVED:

**RECEIVED**
MAY 1 2 2005
MEDICAL
HAMCI-ANNEX

Each time you access health care for a non-emergent
visit, you may be subject to a copayment.
Copayment is appropriate.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is *denied*. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.T.

Official (Signature): *Bill Feltner*   Date: *5/13/05*
R. FELTNER, SHS
HAMILTON CI

R. SOLORZANO, MD, CHO

Distribution:   White   -Returned to Inmate
                Canary  -Returned to Inmate

Pink   -Retained by official responding, or if the response is to an
        informal grievance then forward to be placed in inmate's file.

DC6-236 (Revised 8-00)

# STATE OF FLORIDA
## DEPARTMENT OF CORRECTIONS
### REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

*M̄L̄*
*I = 1114L*

TO:  ☑ Superintendent   ☐ Assistant Superintendent   ☐ Secretary, Florida Department of Corrections

FROM: Ciccone, Nicholas V          B-124788  Hamilton Main Unit
Last Name, First, Middle Initial          Number        Institution

---

**PART A – INMATE GRIEVANCE**

Two months ago I was Given a cream as a treatment for Scabbies on the tube it says one treatment is Generally Curative, well it didn't get rid of them all the first time so I Signed up for Sick call again to get another tube of cream and I was charged a four dollar co payment. I am requesting this co payment be Reversed as well pursuant to F.S. 945.6037 (2003)(1)(6) Non emergency Health care and Inmate co payment The department must waive all or part of the copayment for an inmate's visit if the Health care was initiated by the Health care provider or consists of Routine follow up care. which this is as well.

5/16/05                                   Nicholas V Ciccone  B-124788
Date                                       Signature of Grievant and D.C.#

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: None  Nicholas V Ciccone
                                                                          #          Signature

---

**PART B – RESPONSE**

5-18-05
0505215092
Med

---

Signature and Typed or          Signature of Superintendent,          Date
Printed Name                    Assistant Superintendent, or
of Employee Responding          Secretary's Representative

ORIGINAL: TO BE RETURNED TO GRIEVANT AFTER COMPLETION OF ACTION.

TEAR ON PERFORATION

**PART B - RESPONSE**

| CICCONE, NICHOLAS | 124788 | 0505-215-092 | (215) HAMILTON C.I. | E1114L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | GRIEVANCE INSTITUTION | HOUSING LOCATION |

Your grievance has been reviewed and evaluated.   The response to your informal grievance adequately addresses this issue.

Based on the above, your grievance is denied.  You may appeal this decision by submitting a DC1-303 to Ms. Celeste Kemp, Inmate Grievance Administrator, Department of Corrections, 2601 Blairstone Road, Tallahassee, FL 32399-2500 within fifteen days following this decision.

| R. SOLORZANO, MD, CHO | | 5/25/05 |
|---|---|---|
| HAMILTON CI | | |
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY

    (2 Copies) Inmate

    (1 Copy) Inmate's File

    (1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

    (1 Copy) Inmate

    (1 Copy) Inmate's File - Inst./Facility

    (1 Copy) C.O. Inmate File

    (1 Copy) Retained by Official Responding

33-103.011 (4)

expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step.

DISREGARD (NC)

# STATE OF FLORIDA
## DEPARTMENT OF CORRECTIONS

### REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

TO: ☑ Superintendent     ☐ Assistant Superintendent     ☐ Secretary, Florida Department of Corrections

FROM: _Ciccone, Nicholas V_     _B-124788_   _Hamilton C.I. Main unit_
Last Name, First, Middle Initial       Number       Institution

---

**PART A – INMATE GRIEVANCE** of a medical Nature

Sir I Am writing In Regards to my medical Situation, About 2 months Ago I was treated foe scabbies and went Back twice Since then and told them they are still Alive and I am still itching and I was told that this is normal to still be itching for up to 4 weeks After, But I Am positive they Are still Alive and they Are Noctural mites so I Can't sleep At night And my Appointment for the Doctor keeps getting postponed because they Are Backlogged. I Am Requesting proper treatment ~~immediatly~~

_5/22/05_                               _Nichol v Case_  B-124788
Date                                    Signature of Grievant and D.C.#

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: _none_  _Nichol v Case_
                                                                    #        Signature

---

### PART B – RESPONSE

5-23-05
0505215106
Ned

---

Signature and Typed or          Signature of Superintendent,          Date
Printed Name                    Assistant Superintendent, or
of Employee Responding          Secretary's Representative

ORIGINAL: TO BE RETURNED TO GRIEVANT AFTER COMPLETION OF ACTION.

TEAR ON PERFORATION

**PART B - RESPONSE**

| CICCONE, NICHOLAS | 124788 | 0505-215-106 | (215) HAMILTON C.I. | E1114L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | GRIEVANCE INSTITUTION | HOUSING LOCATION |

By the time you receive this response, you should have been seen by the physician. If you continue to have problems, you may address at sick call.

Based on the above, your grievance is denied. You may appeal this decision by submitting a DC1-303 to Ms. Celeste Kemp, Inmate Grievance Administrator, Department of Corrections, 2601 Blair Stone Road, Tallahassee, Fl 32399-2500, within fifteen days following this decision.

| R. SOLORZANO, MD, CHO  HAMILTON C.I. | | 5/31/05 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

| COPY DISTRIBUTION -INSTITUTION / FACILITY | COPY DISTRIBUTION - CENTRAL OFFICE |
|---|---|
| (2 Copies) Inmate | (1 Copy) Inmate |
| (1 Copy) Inmate's File | (1 Copy) Inmate's File - Inst./Facility |
| (1 Copy) Retained by Official Responding | (1 Copy) C.O. Inmate File |
| | (1 Copy) Retained by Official Responding |

AX H18ZH

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

RECEIVED

E1114L

JUN 06 2005

Department of Corrections
Inmate Grievances

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

TO: ☐ Superintendent    ☐ Assistant Superintendent    ☑ Secretary, Florida Department of Corrections

FROM Ciccone, Nicholas ✓    B-124788    Hamilton 4 Main Unit
_____    _____    _____
Last Name, First, Middle Initial    Number    Institution

05-6-15481

---

### PART A – INMATE GRIEVANCE

On May 8th I signed up for sick call to be re-seen again because I still had scabbies which I was already treated for in march and was put off all the way until may I was already charged initially and shouldn't have been charged again pursuant to F.S. 945.6037 2001 (1)(d) (The department must wave all or part of the co-payment if the Health care was initiated by the Health care provider or consists of routine follow up care. The Insti Institute Ignores Florida statue And I am requesting the copayment be reversed as relief.

5/26/05
Date

_____ B-124788
Signature of Grievant and D.C.#

---

**BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** None _____
#                    Signature

---

### PART B – RESPONSE

# SEE ATTACHED
# RESPONSE

_____    Orlester Dickens    6-28-05
Signature and Typed or    Signature of Superintendent,    Date
Printed Name    Assistant Superintendent, or
of Employee Responding    Secretary's Representative

ORIGINAL: TO BE RETURNED TO GRIEVANT AFTER COMPLETION OF ACTION.

TEAR ON PERFORATION

## Part B Response

| Ciccone, Nicholas | 124788 | 05-615481 |
|---|---|---|
| **INMATE** | **NUMBER** | **GRIEVANCE LOG NUMBER** |

Appeal Denied:

Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.

It is determined that the response made to you by Ruth Feltner on 5/13/05 appropriately addresses the issues you presented.

It is the responsibility of your Chief Health Officer to determine the appropriate treatment regimen for the condition you are experiencing.

A co-payment charge applies each time you initiate a Health Services encounter regardless if it is for the same medical complaint/issue.

All inmate self-initiated sick call visits that are determined to be of a non-emergent nature will incur a $4.00 co-payment.

This practice is in keeping with the Florida Statues.

You are encouraged to cooperate with your healthcare staff by following the treatment regimen prescribed.

Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

**CONFIDENTIAL**

THIS DOCUMENT MAY CONTAIN CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENEDED FOR THIS ADDRESSEE ONLY.  UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW

_for_  Pilar Gudino, IISC

_JoAnne Dessel_                        _Charles Dickens_     6-28-05
SIGNATURE AND TYPED OR          SIGNATURE OF WARDEN,              DATE
PRINTED NAME OF                 ASST. WARDEN OR
EMPLOYEE                        SECRETARY'S
RESPONDING                      REPRESENTATIVE

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Jacksonville DIVISION

NICHOLAS V CICCONE
    PLAINTIFF,

        V                                    CASE Nos _____

Jack sapp et al
        Defendants,
_____   /

## Memorandum of Law

   THIS IS A CIVIL RIGHTS CASE Filed Under
42 USC § 1983 BY A STATE Prisoner And
ASSERTING Claims For THE Denial of medical
CARE IN Violation of THE EIGHTH And fourteenth
Amendment of THE UNITED STATES Constitution
THE Defendants ARE SUED IN THEIR individual
AND Official capacity And THE Plaintiff
SEEKS Damages Against All Claims.

## Statement of THE case

   THE Plaintiff AVERS THAT HIS RIGHTS Were
Violated under THE EIGHTH And Fourteenth Amendment
Of THE United States Constitution As well As Under

Article 1 Section 9 and 17 of the Florida Constitution when the Defendants were deliberately indifferent to the Plaintiff's serious medical condition that cumulated into the twelve weeks of the Wanton and unnecessary infliction of pain.

<u>Statement of Facts</u>

1) The Plaintiff is a State Prisoner at the Hamilton County Correctional Facility in Hamilton County, Florida

2) The Plaintiff must rely on the medical staff within the facility to care for his medical needs

3) On February 24th 2005 the Plaintiff declared a medical emergency, He was seen by Nurse C. Hudgins at which time the Plaintiff informed her He was severely itching in his hands, feet, Groin, midsection and buttocks. Nurse Hudgins stated "You might as well sign up for sick call Because if your declaring a medical emergency I'm just Gonna Charge you four dollars and tell you to sign up anyway". <u>Exhibit A Pg1 Entry 1</u>

4) The Plaintiff signed up for sick call on February 27th, 2005 to be seen by Nurse Zak. The Plaintiff informed him About all the areas in which He was itching and further told him that He believed he may

HAVE CONTRACTED SCABIES BASED ON THE INFORMATION THAT THERE WERE SO MANY REPORTED CASES OF SCABIES WITHIN THE FACILITY AT THE TIME. NURSE ZAK STATED: "I AM NOT CONVINCED YOU HAVE SCABIES". HE GAVE THE PLAINTIFF HYDROCORTIZONE CREAM AND SAID YOU CAN COME BACK IN SEVEN TO TEN DAYS IF YOUR CONDITION CONTINUES  SEE Exhibit A PG 2

5) THE PLAINTIFF REPORTED BACK TO MEDICAL ON MARCH 2ND, 2005 BECAUSE HIS CONDITION HAD BECOME MORE SEVERE. THE PLAINTIFF WAS SEEN BY NURSE E. Holmes, AT WHICH TIME SHE DIAGNOSED THE PLAINTIFF WITH SCABIES AND REFERRED HIM TO STAFF PHYSICIAN D. HALL THE FOLLOWING DAY. SEE Exhibit A PG 3

6) SCABIES IS A CONTAGIOUS SKIN DISEASE THAT RESULTS IN INTENSE ITCHING PARTICULARLY AT NIGHT, THE SCRATCHING RESULTS IN SCABS AND SORES. AS DEFINED BY: THE WORLD BOOK ENCYCLOPEDIA, AND THE AMERICAN MEDICAL ASSOCIATION ENCYCLOPEDIA OF MEDICINE  SEE Exhibit B

7) THE PLAINTIFF WAS SEEN ON MARCH 3RD, 2005 BY STAFF PHYSICIAN D. HALL WHO GAVE THE PLAINTIFF A MEDICATION KNOWN AS "PERMETHRIN" THE TREATMENT FOR SCABIES  SEE Exhibit A PG 5

3

8) THE DESCRIPTION, DOSAGE AND ADMINISTRATION OF THE MEDICATION "PERMETHRIN" IS LISTED IN Exhibit C. THE PLAINTIFF SECURED THIS INFORMATION FROM THE Physicians' Desk Reference

IN DOSAGE AND ADMINISTRATION IT CLEARY STATES: "ONE APPLICATION IS Generally CURATIVE" WHICH DOES IN FACT MEAN THAT ONE TREATMENT MAY NOT BE EFFECTIVE.

IT FURTHER STATES: "Demonstrable living MITES AFTER 14 DAYS INDICATE REtREAtMENT IS Necessary!"

9) THE Plaintiff further Maintains THAT HIS INITIAL TREATMENT WAS INEFFECTIVE.

10) THE Plaintiff REPORTED BACK TO medical ON MARCH 5th, 2005 TO BE SEEN BY NURSE ZAK AGAIN, THE Plaintiff informed him THAT HIS CONDITION WAS STILL THE SAME AND HE WAS THEN REFERRED BACK TO STAFF Physician O. Hall SEE Exhibit A PG 6

11) PATIENTLY WAITING TO SEE THE DOCTOR AGAIN THE Plaintiff REPORTED BACK TO SICK CALL ON March 13th, 2005 BECAUSE AT THIS POINT IN TIME HE WAS SUFFERING FROM Sleeplessness, COVERED IN SCABS AND SORES AND IN immense PAIN, HE WAS AGAIN SEEN BY NURSE ZAK WHO STATED: "You WILL JUST HAVE TO WAIT". SEE Exhibit A PG 7

4

12) ON MARCH 15th, 2005 THE Plaintiff WAS SENT TO Medical BY LT. HERRING BECAUSE SO MANY INMATES WERE COMPLAINING of him in OPEN POPULATION COVERED With SCABS AND SORES WITH A CONTAGIOUS CONDITION, BUT HE WAS SENT AWAY BY NURSE HUDGINS SEE Exhibit A PG 8 ENTRY 2

13) ON MARCH 17th, 2005 THE Plaintiff REPORTED TO Medical VIA A "CALL OUT" TO SEE STAFF PHYSICIAN D. HALL. AT THIS POINT IN TIME THE Plaintiff's CONDITION WAS SO AGGRAVATED THAT IT WAS AFFECTING HIS NERVOUS SYSTEM Which CAUSED EXTREME STRESS AND TRIGGERED A REOCCURANCE of HERPES IN THE Plaintiff THAT HAD been in REMISSION SINCE 1990. THE Plaintiff WAS GIVEN VALTREX FOR THE HERPES BUT TOLD by PHYSICIAN HALL THAT HE COULD NOT BE RETREATED SO SOON FOR SCABIES, PHYSICIAN HALL STATED: "YOU WILL HAVE TO WAIT 2 MONTHS BECAUSE THE CREAM [PERMETHRIN] IS TOXIC AND CAN KILL YOU" SEE Exhibit A PG 9 ENTRY 1

14) THE Plaintiff LEARNED THROUGH RESEARCH THAT THIS IS IN FACT CONTRARY TO WHAT THE DOSAGE & ADMINISTRATION CLEARLY STATES: "Demonstrable living mites after 14 days indicate RETREATMENT";

15) ON PAGE 15 OF THE Plaintiff's MEDICAL RECORDS, STAFF PHYSICIAN D. HALL MADE AN ENTRY ON 5·24·05 Which CLEARLY STATES: "SCABIES MEDICATION PERMETHRIN SHOULD

NOT BE Refilled MORE OFTEN THAN Every 2 months·"

16) Between THE DATES of march 17th, 2005 AND MAY 26th, 2005 THE Plaintiff Reported To medical for sick Call SIX Times THAT ARE Recorded, most of His visits HE WAS SEEN By NURSE ZAK, HE avers THAT HE was Treated like A NUISANCE NOT like A Patient, He had his vital Signs Taken AND THEN sent AWAY.

17) THERE Were SEVERAL OTHER UnRecorded OCCASIONS When THE Plaintiff WAS Sent To medical by: CAPT. Baker, CAPT. Mann, SGT. allen, officer Voyles AND medical Repeatedly Sent Him AWAY DOING Absolutely NOTHING.

18) ON April 27th NURSE Sistrunk Referred THE Plaintiff To mental Health because AT THIS Point in Time HE WAS in A STATE of Confusion. THE only sleep THE Plaintiff was Getting WAS DURING THE DAY AT half hour intervals DURING INSTITUTIONAl COUNTS Because AT Night HE would lay AWAKE Crying AND Shaking AND Practically digging THROUGH his skin.
          - EXHIBIT A PG 10 ENTRY 2 -

19) THE Plaintiff Avers THAT IT was IN fact THE most Difficult Twelve weeks of his life, AND No words Will ever Truly Describe WHAT HE was PUT THROUGH.

6

20) ON MAY 8th, 2005 THE Plaintiff Reported back To Sick Call To be SEEN by NURSE ZAK AND THE Plaintiff Practically HAD To BeG To SEE THE DOCTOR AGAIN To be RETREATED, NURSE ZAK FinAlly ReferreD Him Back To THE DOCTOR. SEE Exhibit A PG 12

21) THE Referral FOR THE Plaintiff WAS ISSUED on MAY 8th, 2005 THE Plaintiff HAD TO GO Back To Sickcall ON MAy 19th, 22ND AND 24th because HE STill had noT SEEN THE Doctor, mediCAl ClAimeD THEY Were Backlogged.

22) THE Plaintiff HAD His father THEN CAll THE HAmilton County Health DePT., and Two days LATEr on MAY 26th 2005 HE WAS RETREATED. His scAbies WAS CUreD AND His HErPes Back in Remission A few DAYS LATEr.

23) IT Took THE Defendants 83 DAYS TO ADequAtEly ADDRess THE Plaintiff

24) THE Plaintiff WAS RePEAtEdly Denied medical CARE.

25) THE Plaintiff Filed several GRievAnCES on THE ISSUE All of which WERE Denied. THE GRievAnCES WERE ReviEwed AnD signeD by: WARDEN SAPP, CHiEf health OffiCER - R.Solorzano AND Senior Health AdministratoR R.feitNER, THEY AS well chose To ignore THE Plaintiff.

7

THE Plaintiff STATES a Claim UNDER THE 8th AND 14th Amendment of THE US Const. AS WELL AS ARTICLE 1 Section 9 AND 17 of THE Florida Constitution.

THE Plaintiff ACKNOWLedges THE TWO PRONG TEST OF THE 8th amendment AND will Adequately ADDRESS BOTH THE "OBJECTIVE COMPONENT" WHICH Defines THE Seriousness of THE CHALLENGED Conditions AND THE "Subjective Component" WHICH Defines Deliberate indifference of THE officials WHO WERE Responsible

IN ADDRESSING THE OBJECTIVE Component IN ORDER TO VIOLATE THE 8th amendment THE Conditions MUST Amount To " THE UNQUESTIONED AND SERIOUS DEPRIVATIONS OF BASIC Human NEEDS" OR THE "Minimal Civilized measure of life's Necessities" AS STATED IN RHODES V Chapman 452 US At 347 101 S. Ct. 2392 (1981)

THE SUPREME COURT IN Helling v McKinney — US — 113 S. Ct 2475, 80 (1993) citing DEShaNEY v Winnebago Co. DEPT. of SS 489 US 189, 199-200, 109 S. Ct. 998 (1989) listed BASIC Human Needs ass "Food, Clothing, Shelter, Medical CARE AND Safety"

To VIOLATE THE 8th Amendment Deprivations of BASIC NEEDS MUST Be SERIOUS enough To Amount To THE "WANTON AND UNNecessary Infliction of Pain" SEE RHODES v Chapman SUPRA, However THEY NEED NOT Inflict Physical INJURY Hicks v frey 992 F2d 1450, 1457 6th CIR 1993 OR CAUSE LASTING OR PERMANENT HARM BOReth v WISCOMB 930 F2d 1150, 1154-55 6th CIR 1991

8

IN HUDSON v McMILLIAN 503 US 1, 112 S. cT 1000 1992
THE SUPREME COURT HELD THAT "PAIN NOT INJURY IS
THE BASIS OF AN 8th Amendment ViolaTioN. IN McLAURIN v
PRATER 30 F 3d 982, 984 8th CIR 1994 THE COURT HELD PAIN IS
" SUFFICIENT INJURY To Allow Recovery" UNDER THE 8th Amendment.

THE 8th Amendment STANDARD" DRAWS it's meaning From THE
evolving STANDArDs of Decency THAT mark THE Progress of
A MATURING SOCIETY" AS STATED IN Rhodes v Chapman SUPRA

THE PlaintiFF AVERS THAT No medical STAFF IN A DeCeNT
MATURING SOCIETY WOULD HAVE Took SuCh little interesT IN A PatieNT
OR LeFT A PatieNT IN THE CoNDiTioN THAT THE DeFeNDANTS LeFT
THE PlaintiFF IN.

IN AddRessing THE "SUbjective CompoNent" THE PlaintiFF
Will SHoW How THE DeFeNDANTS ActeD WiTH DelibeRATe indiFFeReNce.
THE SUPRemE CouRT IN FARMER v BReNNAN 114 SCT 1979 HelD
THAT: PRiSoN oFFicials can be delibeRately indiFFeRent iF " THE
OFFicial KNoWs oF ANd DisRegARDS AN exceSSive RiSk To
inmaTe health OR safeTy" THE SUPReme CouRT FuRTheR STATeD THAT
DelibeRATe iNDiFFeReNce can be "iNFeRReD" oR"FouND" iF oFFicals
FaileD To ResPoND ReasonAbly To A KNoWN RiSk id 1982-84.
THE FARMER CouRT HolDS THAT PRiSoN oFFicials MuST Do
WHAT IS ReasonAble, NoT WHAT IS easy id. 1983-84.

## GROUND I

### The Objective Component

THE PLAINTIFF AVERS THAT HE WAS DEPRIVED OF One of Lifes Basic Human Needs, ADequate medical Treatment IN A Time of Need. IT IS APPARENT THAT THE Plaintiff was in fact DIAGNOSED WITH SCABIES, A CONTAGIOUS Skin DISEASE IN WHICH THERE ARE 16 REPORTED VISITS To medical on THE FACE of THE Record NOT TO mention All THE Times THE SECURITY STAFF HAD Sent him TO medical in which he was Turned away. THE Plaintiff was Repeatedly Told by NURSE ZAK AND HUdgins THAT "THERE IS nothing We Can Do, You'll JUST HAVE TO WAIT". THE Plaintiff maintains THAT IN THE Description of THE Medication [Permethrin] it clearly STATES: Demonstrable living mites AFTER 14 DAYS INDICATE ReTreatment IS necessary <u>SEE Medicinal DOSAGE & ADministration</u> EXHIBIT B BUT THE Plaintiff WAS Told HE WOULD HAVE TO WAIT 2 MONTHS, by STAFF Physician D. Hall. THE Plaintiff suffered endlessly FOR 12 Weeks with no logical PURPOSE. THE Plaintiff maintains THAT HE had A CONTAGIOUS Skin DISEASE, A DISEASE IS Defined AS "A CONDITION THAT IMPAIRS Physiological FunCTIONING" THIS IS IN FACT A SERIOUS medical need IN which He was Denied Proper Treatment. THE Plaintiff maintains THAT He had Scabs AND Sores All over his body AND suffered Sleepless nights Throughout THE 12 weeks because Scabies ARE in Fact NOCTURNAL, THE Plaintiff WAS only Able TO sleep AT half hour intervals DURING

THE DAYTIME INSTITUTIONAL COUNTS. IN McGuckin v. Smith 974 F 2d AT 1060 9th CIR 1992  THE COURT STATED A MEDICAL CONDITION MAY ALSO BE SERIOUS IF IT "SIGNIFICANTLY AFFECTS AN INDIVIDUALS DAILY ACTIVITIES" IN DEAN V COUGHLIN 623 F.SUPP 392, 404 (1985) THE COURT HELD THAT A MORE GENERAL DEFINITION OF SERIOUS MEDICAL NEEDS REFERS TO "CONDITIONS THAT CAUSE PAIN, DISCOMFORT, OR THREAT TO GOOD HEALTH".

IN ESTELLE V GAMBLE 429 US 97, 97 S.CT 285, 50 LEd 2d 251 (1976) THE SUPREME COURT STATED:

"THE Denial of MEDICAL CARE IS CRUEL AND UNUSUAL PUNISHMENT, because, IN THE WORST CASE, IT CAN RESULT IN PHYSICAL TORTURE AND EVEN IN less SERIOUS CASES it CAN RESULT in PAIN WITHOUT ANY Penological Purpose"

THE PLAINTIFF FURTHER MAINTAINS THAT IT CAN NOT BE DISPUTED THAT HE WAS IN FACT DENIED ADEQUATE MEDICAL TREATMENT AS FOR HIS MEDICAL RECORDS REFLECT TWELVE WEEKS OF REPEATED VISITS IN WHICH HE WAS CONSTANTLY IGNORED. THEY EVEN IGNORED THE PLAINTIFF WHEN THE HAMILTON SECURITY STAFF SENT HIM TO MEDICAL.

11

## GROUND II
### THE Subjective Component

Deliberate indifference can be inferred many ways but in order for Prison officials to be "Deliberately indifferent" they must know of the risk to inmate health and safety and disregard it. In the case at bar each of the named defendants had full knowledge of the plaintiffs condition and chose to ignore it.

Nurses: J. Zak and C. Hudgins seen the plaintiff on numerous occasions and knew of his condition but did nothing to remedy it. Staff Physician D. Hall not only knew of the condition he left the plaintiff in but lied to him about the time of retreatment. Senior Health Administrator R. Feltner had full knowledge by reviewing the plaintiffs grievance, signing it and by speaking to the plaintiffs father on the phone. Staff Physician M. Dela-Cerna knew by reviewing the plaintiffs medical file and signing it. The chief Health officer R. Solorzano had signed three grievances on the issue and Warden Sapp had signed two grievances on the issue. Each of the defendants disregarded the plaintiffs serious medical condition.

12

THE Plaintiff Maintains THAT every Time he went To Sick call Throughout THE 12 weeks Not only was He Ignored He was Treated like he was bothering THE medical Staff. in Hughs v Joliet corr. center 931 F2d 425, 428 (7th cir 1991) THE Court STATED THAT: (evidence That medical staff Treated The Plaintiff "Not as a Patient, But as a Nuisance" and were insufficiently interested in his health to take even Minimal steps to Guard against THE Possibility that the injury was severe) could support a finding of deliberate indifference. THE Plaintiff further maintains THAT He can't even count THE Amount of Times THAT He was Told "what is it now Ciccone" or "You'll Just have To wait" or "There is Nothing we can Do" THE defendants Were Much worse Than deliberately indifferent Towards Plaintiff, They Just Didn't care because he was a Prisoner.

IN Hudson v McHugh 148 F.2d 859, 864 (7th cir 1998) An inmate went eleven Days without His medication Despite Repeated Requests To Jail Personnel, in which he suffered a seizure. THE Court Held THAT " This is THE Prototypical case of Deliberate indifference, An inmate with a Potentially serious Problem Repeatedly Requesting medical Aid, Receiving none, And then suffering a serious injury. In THE case AT Bar THE Plaintiff went 12 weeks without Proper Treatment For his condition.

THE ESTELLE COURT 429 US 97 CITING GREGG V GEORGIA 428
US 153 96 S. Ct 2909 At 2925 Led 2d 859 (1976) Held THAT:

"THE INFLICTION OF SUCH Unnecessary suffering is inconsistent
With Contemporary standards of Decency As manifested in
MODERN Legislation CODIFYING THE Common Law View THAT
It is BUT JUST THAT THE Public be Required TO CARE For
THE PRISONER, Who cannot by Reason of THE DEPRIVATION
of his Liberty CARE for himself" WE THEREFORE Conclude
THAT Deliberate indifference To Serious MEDICAL Needs
of PRISONERS Constitutes "THE Unnecessary AND WANTON
INFLICTION of Pain" Proscribed by THE 8th Amendment.
THIS IS TRUE WHETHER THE indifference IS manifested by
PRISON DOCTORS in THEIR Response To Prisoner Needs
OR BY PRISON GUARDS intentionally interfering With THE
TREATMENT once Prescribed, Regardless of how Evidenced
deliberate indifference To A Prisoners Serious ILLNESS
OR INJURY STATES A CAUSE Of ACTION Under 83.

GROUND III

THE Plaintiff Refers TO THE INMATE MEDICAL
HANDBOOK IN Exhibit D IT clearly States
IN Section B(1) "Quality AND Level OF CARE Will
meet CONSTITUTIONal STANDARDS of CARE.

14

IN B(8) IT STATES: "ACCESS TO EMERGENCY CARE
WILL NOT BE delayed if an emergency
is declared by you"
THE Plaintiff WAS Sent AWAY AT several medical Emergencies.
THE Plaintiff AVERS THAT No. one on THE medical
STAFF HAS Any RESPECT FOR Any of THESE
Standards. THE Plaintiff WAS Repeatedly Charged
FOUR DOllAR co-payments EACh Time he Visited medical
AND SECTION D.(8)   Specifically STATES IN
WAIVERS of co-Payment fees will be MADE under
THE following circumstances:
D.(8)- An institution wide health CARE measure that is
NECESSARY To Address THE spread of specific
INfectious OR contagious diseases.

THE Actions of THE defendants ARE malicious,
THE hAVE No CARE OR concern for inmates whatsoever
AND Rules AND Regulations mean Nothing TO THEM

FloridA STATUES Also STATES IN

— 945.601 4(a) Assuring that All inmates Receive
APPropriate AND timely Services IN A SAFE
ENVIORNMENT.

— 945.6034 (3) THE DePt. shall comply with All health
CARE STANdards.

15

The Plaintiff further maintains that it is a well known fact that an Administrative Agency must follow it's own Rules; see   Pane V Block 714 F.2d 1510 11th Cir 1983
Moret V Karn 746 F.2d 989, 992 3rd Cir 1984

## In Conclusion

The Plaintiff avers that his constitutional rights were violated under the 8th and 14th Amendment to the United States Constitution when the defendants ignored the Plaintiff's serious medical condition and failed to provide him with adequate medical treatment. He further maintains that although his Due Process rights were violated and he was subjected to the wanton and unnecessary infliction of pain, the most significant violation that occured those 12 weeks was the lack of concern for a human being.

Wherefore the Plaintiff seeks a declatory judgement stating the defendants violated his constitutional rights and compensatory damages in the amount of $50,000 against each of the named defendants to compensate him for pain and suffering, mental anguish, embarrassment and humiliation suffered by him due to the misconduct of the defendants. The Plaintiff also seeks all court costs to be paid by the defendants and punitive damages in the amount the court deem just and proper.

Respectfully submitted.

# EXHIBIT A

**FLORIDA DEPARTMENT OF CORRECTIONS**
## Chronological Record of Health Care

Allergies: NKA

| DATE/TIME | | |
|---|---|---|
| 1-26-05 1515 | MD CLINIC DATE/TIME | EMRL - JOINT PAIN ® Knee |

T 97.8 P 51 R 18 B/P 108 WT 184 HT 5 10

S ® Knee - injury from motorcycle accident, in 1996. Re-injured knee here when he jumped off his upper bunk

O The ® knee is slightly swollen

A Sprained ® knee

P Applied size (M) Knee Support
Rx #B116 6mo Tab T-id x 15d.
Extend low bunk pass for 3 months (1-26-05 - 4-26-05)
Knee Support (1-26-05 - 1-25-06)

D. HALL, D.O.
STAFF PHYSICIAN
HAMILTON CI

C. HUDGINS, RNS
HAMILTON C.I.

---

| 2-6-05 1500 | INCIDENTAL NOTE: TRANSFER / EOS  New Com |
|---|---|

— RECORD WAS REVIEWED
— OBIS / COMPUTER UP-TO-DATE
— DEFICIENCIES CORRECTED
— LAB / LOOSE REPORT FILED
— MEDICAL RECORD /____ # VOLUME
— DENTAL RECORD SENT
— PSYCH RECORD SENT

Q. Layman

---

FEB 1 6 2005   **SEEN IN MENTAL HEALTH**
1300

J. NUNN, M.S., LMFT
PSYCH. SPECIALIST
HAMILTON C.I.

---

2/24/05   Dr. note: Declined medical emergency.
0900   States will sign up for sick call.

C. Hudgins RNS

C. HUDGINS, RNS
HAMILTON C.I.

---

Inmate N -124788 TM   12/07/2004
DC#____
Date of B CICCONE, NICHOLAS VINCENT
Institutio
W/M DOB 11/12/1971 (33)

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan

DC4-701 (Revised 3/00)

This form is not to be amended, revised, or altered without approval
of the Deputy Director of Health Services Administration.

DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
**RASH ASSESSMENT**

## SUBJECTIVE

Date/Time 2-27-05  0715 _____  Age 33

Date rash first noticed: 2-20-05 _____

Medication allergies ____ NKDA _____  Food allergies ____ NKA _____

Hx of allergic reactions?  [X] No  [ ] Yes (describe) _____

Possible exposure/contact with:  [ ] Plants/bushes  [ ] Chemicals  [ ] Lice/scabies/insects

History of:  [X] Pain  [ ] Itching

Current medications (list) ____ Ø _____

Recently discontinued or completed medications?  [X] No  [ ] Yes (name) _____

## OBJECTIVE

B/P 109/69 ____  Temp 97⁵ ____  Pulse 55 ____  Resp 16 ____  Weight 181 ____

Location(s) of rash: back, crest, Lower legs, abdomen _____

Symptoms of respiratory distress?  [X] No  [ ] Yes (**requires immediate physician notification**).

**Check all that apply.  Place additional comments on back.**

Description of rash:  [X] Red  [ ] Raised  [X] Flat  [ ] Scaly

[ ] Dry  [ ] Bleeding  [ ] Swelling (describe) _____

[ ] Weeping (describe drainage): _____

## ASSESSMENT

Alteration in skin integrity R/T rash

[ ] S/S of infection  [X] No evidence of infection

## PLAN (CHECK ALL THAT APPLY)

[ ] Area cleaned with: _____

[X] OTC/Rx given (name): HC 1%  _____  [ ] F/U in: _____

[ ] Clinician referral

## EDUCATION

[X] Instructed on skin care, s/s of infection, medication compliance, F/U.

[ ] Return in ____ 7-10 ____ days if no improvement.

[ ] Other (requires comment).

**Place additional comments on back.**

_____ J.F. ZAK, SRN
Signature/Stamp           HAMILTON C.I.

-124788 TM    12/07/2004   _____

CICCONE, NICHOLAS VINCENT  E/SEX_____

W/M DOB 11/12/1971 (33)    _____

This form is not to be amended, revised, or altered without approval

DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
**RASH ASSESSMENT**

## SUBJECTIVE

Date/Time _3·2·05  2120_  Age _33_
Date rash first noticed: _2 WKS ago_
Medication allergies _NKA_   Food allergies _NKA_
Hx of allergic reactions?   ☐ No   ☐ Yes (describe)_____
Possible exposure/contact with:   ☐ Plants/bushes   ☐ Chemicals   ☑ Lice/(scabies)/insects
History of:   ☐ Pain   ☑ Itching
Current medications (list)_____
Recently discontinued or completed medications? ☑ No ☐ Yes (name)_____

## OBJECTIVE

B/P _32/78_   Temp_____   Pulse _88_   Resp_____   Weight _180_
Location(s) of rash:_____
Symptoms of respiratory distress? ☑ No ☐ Yes (**requires immediate physician notification**).
**Check all that apply.  Place additional comments on back.**
Description of rash: ☑ Red   ☐ Raised   ☐ Flat   ☐ Scaly
   ☐ Dry   ☐ Bleeding   ☐ Swelling (describe)_____
   ☐ Weeping (describe drainage):_____

## ASSESSMENT

Alteration in skin integrity R/T rash
☐ S/S of infection   ☑ No evidence of infection

## PLAN (CHECK ALL THAT APPLY)

☐ Area cleaned with:_____
☑ OTC/Rx given (name): _Benadryl_   ☐ F/U in:_____
☑ Clinician referral

## EDUCATION

☑ Instructed on skin care, s/s of infection, medication compliance, F/U.
☐ Return in _____days if no improvement.
☐ Other (requires comment).

**Place additional comments on back.**

Signature/Stamp   E. HOLMES, SLPN
HAMILTON C.I.

-124788 TM   12/07/2004

CICCONE, NICHOLAS VINCENT   SEX_____

W/M DOB 11/12/1971 (33)

This form is not to be amended, revised, or altered without approval

**Additional Comments**

IM C/o itching in midsection x 2wks
& getting worse - Rash noticed in
webs of hands Abd. wall pilat sides
and belt line. referred to MD
Clinic 3.3.05 to R/O Scabies _____

_____
Signature/Stamp

INMATE NAME _Ciccone, Nicholas_
DC# _124788_      RACE/SEX _WM_
DATE OF BIRTH _11-12-1971_
INSTITUTION _Ham CF_

DC4-683W (1/02) Page 2 of 2

This form is not to be amended, revised, or altered without approval
of the Deputy Director of Health Services Administration

**FLORIDA DEPARTMENT OF CORRECTIONS**
## Chronological Record of Health Care

Allergies: NKA

| DATE/TIME | MD CLINIC   SCRT   R/O Scabies |
|---|---|
| 3.3.05 1600 | DATE/TIME   T 99.2  P 43  R 18  B/P 103/47  WT 189  HT 5'9" |

(S) I have scabies, and I itch all over

(O) Rash on lateral sides, inner thighs and lower abd and 3-4 spots noted on back

(A) Scabies

(P) Scabies treatment protocol ① Permethrin Cream
Apply to entire body and leave on 8-14 hours
② RID (Permethrin Spray) to be sprayed on ALL
bed clothes and personal linens, ③ Give 2 sets
clean clothes, clean linens, blankets + jackets
+ hats ④ Shower and wash off Permethrin Cream
P̄ 8-14 hours.
R/O Shave and Insole Pass given until 2-27-06

D. HALL, D.O.
STAFF PHYSICIAN
HAMILTON CI

Noted A. Jones SRN
3.3.05 1600

---

3/4/05
1635

"E" HIV-1 - Non-reactive - (3-2-05)

Noted A. Jones SRN
3-4-05
2113

A. JONES SRN
HAMILTON C.I.

M. DELA-CERNA, M.D.
STAFF PHYSICIAN
HAMILTON C.I.

---

Inmate Name Ciccone Nicholas
DC# 04788   Race/Sex w/m
Date of Birth 11 12 71
Institution ___

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan

DC4-701 (Revised 3/00)

This form is not to be amended, revised, or altered without approval
of the Deputy Director of Health Services Administration.

DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
**RASH ASSESSMENT**

*SJC*

## SUBJECTIVE

Date/Time _3-5-05  0850_  Age _33_
Date rash first noticed: _2-20-05_
Medication allergies _NKDA_      Food allergies _NKA_
Hx of allergic reactions?  ☒ No   ☐ Yes (describe)_____
Possible exposure/contact with:  ☐ Plants/bushes  ☐ Chemicals  ☐ Lice/scabies/insects
History of:  ☐ Pain  ☐ Itching
Current medications (list)_____
Recently discontinued or completed medications?  ☐ No ☐ Yes (name)_____

## OBJECTIVE

B/P _131/61_   Temp _97°_  Pulse _53_   Resp _16_   Weight _180±_
Location(s) of rash: _Abdomen, lower legs, back_
Symptoms of respiratory distress?  ☒ No ☐ Yes **(requires immediate physician notification).**
**Check all that apply.  Place additional comments on back.**
Description of rash:  ☒ Red  ☒ Raised  ☐ Flat  ☐ Scaly
                    ☒ Dry  ☐ Bleeding  ☐ Swelling (describe)_____
                    ☐ Weeping (describe drainage):_____

## ASSESSMENT

Alteration in skin integrity R/T rash
☐ S/S of infection   ☒ No evidence of infection

## PLAN (CHECK ALL THAT APPLY)

☐ Area cleaned with:_____
☒ OTC/Rx given (name): _HC 1%_      ☐ F/U in:_____
☒ Clinician referral - _M.O. appoint_

## EDUCATION

☒ Instructed on skin care, s/s of infection, medication compliance, F/U.
☐ Return in _____days if no improvement.
☐ Other (requires comment).

**Place additional comments on back.**

Signature/Stamp                    J.F. ZAK, SRN
                                   HAMILTON C.I.

INMATE NAME _Ciccone Nicholas_
DC# _124780_                RACE/SEX _W/M_
DATE OF BIRTH _11-12-71_
INSTITUTION _Hamilton CI_

This form is not to be amended, revised, or altered without approval

DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
**RASH ASSESSMENT**

*Emio*

## SUBJECTIVE 3-13-05

Date/Time 3-13-05  N/O  Age 33
Date rash first noticed: 2-20-05
Medication allergies NKDA  Food allergies NKA
Hx of allergic reactions?  ☒ No  ☐ Yes (describe) ___
Possible exposure/contact with:  ☐ Plants/bushes  ☐ Chemicals  ☐ Lice/scabies/insects
History of:  ☐ Pain  ☐ Itching
Current medications (list) Ø
Recently discontinued or completed medications?  ☒ No  ☐ Yes (name) ___

## OBJECTIVE

B/P 134/74  Temp 97⁶  Pulse 82  Resp 16  Weight 180#
Location(s) of rash: abdomen, bilateral chest side wall, ruin
Symptoms of respiratory distress?  ☒ No  ☐ Yes (**requires immediate physician notification**).
**Check all that apply.  Place additional comments on back.**
Description of rash:  ☒ Red  ☒ Raised  ☐ Flat  ☐ Scaly  (pinpoint)
☒ Dry  ☐ Bleeding  ☐ Swelling (describe) ___
☐ Weeping (describe drainage): ___

## ASSESSMENT

Alteration in skin integrity R/T rash
☐ S/S of infection  ☒ No evidence of infection

## PLAN (CHECK ALL THAT APPLY)

☐ Area cleaned with: ___
☒ OTC/Rx given (name): HC 1% X10 unit dose  ☐ F/U in: ___
☒ Clinician referral M.D. appointment requested in sick call visit at 3-5-05

## EDUCATION

☒ Instructed on skin care, s/s of infection, medication compliance, F/U - avoid hot shower,
☐ Return in ___ days if no improvement.  rinse thoroughly, - cool
☐ Other (requires comment).  moist compress to affected areas,

**Place additional comments on back.**

J.F. ZAK, SRN
HAMILTON C.I.

J. Johson
Signature/Stamp

INM -124788 TM  12/07/2004
DC#
DA: CICCONE, NICHOLAS VINCENT  w/m
INS
W/M DOB 11/12/1971 (33)

This form is not to be amended, revised, or altered without approval

## FLORIDA DEPARTMENT OF CORRECTIONS
# Chronological Record of Health Care

Allergies: NKDA

| DATE/TIME | |
|---|---|
| 1) 3/15/05 1035 | I/9 - Refusal Signed for Lipid Panel - M. Kelsey, S(?) M. Kelsey SCPN |
| 2) 3/15/05 1025 | Inc Note: IM sent to medical by CT for tx. IM has pending MD appt. Advised - Declined Medical Emergency. Advised if tx needed prior to MD appt may sign up for Sick Call. C. Hudgins, RNS |
| | C. HUDGINS, RNS HAMILTON C.I. |
| 3) 3.15.05 1610 | TE   Refusal Lipid Panel 3-15-05 Reviewed Health Care Services D. Hau, D.O. STAFF PHYSICIAN HAMILTON CI |
| 4) 3-16-05 0850 | S/E: Inmate to S/C to inquire on MD appt. informed (soon.) Schedule for 3-17-05. C. Blevins SCPN C. Blevins SCPN |

-124788 TM   12/07/2004

CICCONE, NICHOLAS VINCENT

W/M DOB 11/12/1971 (33)

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan

DC4-701 (Revised 3/00)

This form is not to be amended, revised, or altered without approval of the Deputy Director of Health Services Administration.

## FLORIDA DEPARTMENT OF CORRECTIONS
# Chronological Record of Health Care

Allergies: NKDA

DATE/TIME

March 17, 05
1015

MD CLINIC
DATE/TIME

Scott

Regarding Rash from 3-5-05 DO NOT MOVE

98 P58 R18 BP120 WT 184 HT 519

S) I still ~~itch~~ itch after treatment for scabies on 3.4.05
also itch on my penis
① Herpes genitales ✓
after math itch of scabies

A) Post Scabies treatment
Herpes genitalis

P) Given R) CTM 8mg tab ÷ q8h x 15 d
R) Valtrex 500mg tab ÷ po ① tid x 7d

L. SISTRUNK, SRN
HAMILTON C.I.

D. HALL, D.O.
STAFF PHYSICIAN
HAMILTON C.I.

4-4-05
0930

I/M medical record reviewed. OBU/computer for appt are up-to-date.

D. Kaymer RN

4-15-05,
0705

I.F. Requesting renewal of Low Bunk Pass ① 2° Knee enjury. also would like a refill on Valtrex for Herpes chart to MD for renewal.

L. Sistrunk SRN

L. SISTRUNK SRN
HAMILTON C.I.

B-124788 TM 07 12/07/2004

CICCONE, NICHOLAS VINCENT

W/M DOB 11/12/1971(33) JJ

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan

This form is not to be amended, revised, or altered without approval
of the Deputy Director of Health Services Administration.

DC4-701 (Revised 3/00)

# FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

| Allergies: | NKA |
|---|---|
| DATE/TIME | |

1) 
9/30/05
1405

I/e
x-Ro. Reqi T 4c
Valtrex · ? Days

D. WELLS, SRN
HAMILTON C.I.

(stamp) D. WALTON, MD
STAFF PHYSICIAN
HAMILTON C.I.

2)
12-27-05
0705

IF: Requesting renewed of Valtrex
for herpes out break. Has not
cleared up continues to itch
all over body. I'm stressed out
Inst to sju & mH for evaluation
L Sistrunk RN

L. SISTRUNK, SRN
HAMILTON C.I.

---

Inmate Name
DC#_  -124788 TM   08/07/2002
Date o
Institu  CICCONE, NICHOLAS VINCENT
      W/M DOB 11/12/1971(30)

DC4-701 (Revised 5/00)

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan

This form is not to be amended, revised, or altered without approval
of the Deputy Director of Health Services Administration.

# DEPARTMENT OF CORRECTIONS
## OFFICE OF HEALTH SERVICES
### RASH ASSESSMENT

*S/C*

## SUBJECTIVE

Date/Time 5-6-05  0715          Age 33

Date rash first noticed: March 01

Medication allergies NKDA          Food allergies NKA

Hx of allergic reactions? [X] No  [ ] Yes (describe)

Possible exposure/contact with: [ ] Plants/bushes  [ ] Chemicals  [ ] Lice/scabies/insects

History of: [ ] Pain  [ ] Itching

Current medications (list) Ø

Recently discontinued or completed medications? [ ] No [X] Yes (name) Valtrex

## OBJECTIVE

B/P 110/266   Temp 97   Pulse 54   Resp 16   Weight 181#

Location(s) of rash: Penis (shaft + glans) scrotum  10-lesions

Symptoms of respiratory distress? [ ] No [ ] Yes **(requires immediate physician notification)**.

**Check all that apply.  Place additional comments on back.**

Description of rash: [X] Red  [ ] Raised  [ ] Flat  [ ] Scaly
[ ] Dry  [ ] Bleeding  [ ] Swelling (describe)
[X] Weeping (describe drainage): serous fluid (+ lesion)

## ASSESSMENT

Alteration in skin integrity R/T rash

[ ] S/S of infection  [X] No evidence of infection

## PLAN (CHECK ALL THAT APPLY)

[ ] Area cleaned with:

[X] OTC/Rx given (name): bacitracin          [ ] F/U in:

[X] Clinician referral Consult M.D. on call for Script.  Valtrex 500 mg PO TID X 20

## EDUCATION

[X] Instructed on skin care, s/s of infection, medication compliance, F/U.

[X] Return in 10 days if no improvement.

[ ] Other (requires comment).

**Place additional comments on back.**

J.F. ZAK, SRN
HAMILTON C.I.

Signature/Stamp

-124788 TM    12/07/2004

CICCONE, NICHOLAS VINCENT          E/SEX

W/M DOB 11/12/1971(33)

DC4-683W (1/02) Page 1 of 2

This form is not to be amended, revised, or altered without approval
of the Deputy Director of Health Services Administration

DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
**RASH ASSESSMENT**

*SJC*

## SUBJECTIVE

Date/Time _J-8-05   0805_ ____ Age _33_
Date rash first noticed: _3-5-05_ ____
Medication allergies _NKDA_ ____ Food allergies _NKA_ ____
Hx of allergic reactions? ☒ No ☐ Yes (describe) ____
Possible exposure/contact with: ☐ Plants/bushes ☐ Chemicals ☐ Lice/scabies/insects
History of: ☐ Pain ☐ Itching
Current medications (list) _Valtrex_ ____
Recently discontinued or completed medications? ☒ No ☐ Yes (name) ____

## OBJECTIVE

B/P _104/52_ ____ Temp _97³_ Pulse _54_ Resp _16_ ____ Weight _180 #_
Location(s) of rash: _Recurrent Rash - Trunk, Arms_ ____
Symptoms of respiratory distress? ☒ No ☐ Yes **(requires immediate physician notification)**.
**Check all that apply.  Place additional comments on back.**
Description of rash: ☒ Red ☐ Raised ☐ Flat ☐ Scaly  *Pinpoint*
          ☒ Dry ☐ Bleeding ☐ Swelling (describe) ____
          ☐ Weeping (describe drainage): ____

## ASSESSMENT

Alteration in skin integrity R/T rash
☐ S/S of infection ☒ No evidence of infection

## PLAN (CHECK ALL THAT APPLY)

☐ Area cleaned with: ____
☒ OTC/Rx given (name): _HC 1%_ ____ ☐ F/U in: ____
☒ Clinician referral

## EDUCATION

☒ Instructed on skin care, s/s of infection, medication compliance, F/U.
☐ Return in ____ days if no improvement.
☐ Other (requires comment).

**Place additional comments on back.**

Signature/Stamp _J. Johnson_  **J.F. ZAK, SRN**
                              **HAMILTON CI**

-124788 TM   08/07/2002

CICCONE, NICHOLAS VINCENT  SEX ____

W/M DOB 11/12/1971(30)

DC4-683W (1/02) Page 1 of 2

This form is not to be amended, revised, or altered without approval
of the Deputy Director of Health Services Administration

## FLORIDA DEPARTMENT OF CORRECTIONS
# Chronological Record of Health Care

Allergies: NKDA

| DATE/TIME | |
|---|---|
| 1) 5-13-05 0900 | S: I/m c/o copayment x 2. O: Informal grievance rec'd 5/12/05. A: Copayment appropriate. P: Informal grievance denied x 2. |

K. Feltner, ARNP
HAMILTON C.I.

R. Solorzano, MD, CHO
HAMILTON CI

| 2) MAY 1 3 2005 845 loreenberg | SEEN IN MENTAL HEALTH   J. Nunn MS LMFT |

J. NUNN, M.S., LMFT
PSYCH. SPECIALIST
HAMILTON C.I.

| 3) 5/19/05 0725 | IE: I/m for sx. Re: Continue to itch s/p Premethen Rx of scabies approx 4 wks ago. Also request Valtrex renewal. (Chart to mds) |

M. Wynn, SRN
HAMILTON C.I.

-124788 TM     12/07/2004

ICCONE, NICHOLAS VINCENT

W/M DOB 11/12/1971 (33)

DC4-701 (Revised 3/00)

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan

This form is not to be amended, revised, or altered without approval
of the Deputy Director of Health Services Administration.

DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
**RASH ASSESSMENT**

*Emin*

## SUBJECTIVE

Date/Time 5·22·05  2030 _____ Age 33 _____
Date rash first noticed: 02/05 _____
Medication allergies NKDR _____ Food allergies NKA _____
Hx of allergic reactions? ☑No ☐Yes (describe)_____
Possible exposure/contact with: ☐Plants/bushes ☐Chemicals ☐Lice/scabies/insects
History of: ☐Pain ☐Itching
Current medications (list) ∅
Recently discontinued or completed medications? ☑No ☐Yes (name)_____

## OBJECTIVE

B/P 118/68  Temp 97³  Pulse 54  Resp 16  Weight 129#
Location(s) of rash: Trunk, hands + feet X 2 months
Symptoms of respiratory distress? ☑No ☐Yes (**requires immediate physician notification**).
**Check all that apply. Place additional comments on back.**
Description of rash: ☑Red  ☑Raised  ☐Flat  ☐Scaly  Pinpoint
☐Dry  ☐Bleeding  ☐Swelling (describe)_____
☐Weeping (describe drainage):_____

## ASSESSMENT

Alteration in skin integrity R/T rash
☐S/S of infection  ☑No evidence of infection

## PLAN (CHECK ALL THAT APPLY)

☐Area cleaned with:_____
☑OTC/Rx given (name): Derma X2 _____ ☐F/U in:_____
☐Clinician referral  HC 1% X5
Non-emergent / Exams opens to sign up for Sick Call if so desired

## EDUCATION

☑Instructed on skin care, s/s of infection, medication compliance, F/U.
☐Return in _____ days if no improvement.
☑Other (requires comment). Eg. Cool shower. ⟨AP⟩ 5·23/05 5⁵⁰
  M. DELA-CERNA, M.D.
  STAFF PHYSICIAN
  HAMILTON C.I.

**Place additional comments on back.**

J.F. ZAK, SRN
HAMILTON C.I.

Signature/Stamp

-124788 TM    08/07/2002

CICCONE, NICHOLAS VINCENT /SEX_____

W/M DOB 11/12/1971(30)

**DC4-683W (1/02) Page 1 of 2**

This form is not to be amended, revised, or altered without approval
of the Deputy Director of Health Services Administration

# FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

Allergies: NKDA

| DATE/TIME | | |
|---|---|---|
| 1) MAY 2 4 2005 1300 | SEEN IN MENTAL HEALTH  *J. Nunn* | J. NUNN, M.S., LMFT PSYCH. SPECIALIST HAMILTON C.I. |

2) 5.24.05 1600  T/E Re: Note 5.19.05
Scabes medication permethrin should
not be refilled more often than q 2 months
Itching may continue for up to 8 weeks
after treatment
Must come in for Valtrex

*2/24/05 1930 D. Wells, SRN Hamilton C.I.*

D. HALL, D.O.
STAFF PHYSICIAN
HAMILTON C.I.

3) 5-26-05 1500  MD CLINIC
DATE / TIME
T 97.7  P 48  R 18  B/P 115/67  WT 179  HT 5' 9"

Scra - Rash -
Reoccurring

(S) Rash on body and especially
interdigital spaces
(O) Classic scabies
Groin - red papules & vessicles
of Herpes Genitalis
(A) Scabies
Herpes Genitalis
(P) Permethrin treatment
& Valtrex 500mg Tab T Tid X 10d

*dose given in clinic 998 ... 5-26-2005*

D. WELLS, SRN
HAMILTON C.I.

B-124788 TM 07 12/07/2004

ICCONE, NICHOLAS VINCENT

W/M DOB 11/12/1971(33) JJ

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan

This form is not to be amended, revised, or altered without approval
of the Deputy Director of Health Services Administration.

DC4-701 (Revised 3/00)

# EXHIBIT B

The World Book Encyclopedia

**Scabies,** *SKAY beez,* is a contagious skin disease that causes intense itching. In adults and older children, scabies may affect any part of the body from the neck down. It most frequently involves the skin between the fingers; under the arms; and on the wrists, elbows, breasts, penis, and lower back. Babies may be infected over their entire body, including the head.

Scabies is caused by the *itch mite,* a spiderlike animal known scientifically as *Sarcoptes scabiei.* This mite can barely be seen with the unaided eye. The female digs a burrow under the skin and lays eggs there. The eggs hatch three to five days later. The young mites mature into adults in five days to two weeks. They mate on the skin surface, and the females then dig their burrows.

Scabies is spread through skin contact. Physicians treat the disease with creams or lotions that kill the

(1)

THE AMERICAN MEDICAL ASSOCIATION Encyclopedia of MEDICINE

## Scabies

 A skin infestation caused by the mite *SARCOPTES SCABIEI*, which burrows into the skin, where it lays eggs. Scabies is highly contagious. Hatched mites can pass from an infested individual to a person standing close beside him or her, although infestation is more likely through physical contact (such as sexual intercourse). The disorder is most common in infants, children, young adults, or in people who are institutionalized.

**SYMPTOMS**

The openings of the mite's burrows can be seen on the skin as tiny, gray, scaly swellings, usually between the fingers, on the wrists and genitals, and in the armpits. Later, reddish lumps may appear on the limbs and the trunk. The infestation causes intense itching, particularly at night, and scratching results in the formation of scabs and sores.

**TREATMENT**

The condition is treated by applying an insecticide lotion (such as *lindane*) to all skin below the sufferer's head. The lotion usually kills the mites, but itching may persist for up to two weeks. All members of the affected person's household (even if they show no signs of infestation) should be treated simultaneously. (2)

# EXHIBIT  C

Penederm Incorporated
320 LAKESIDE DRIVE, SUITE A
FOSTER CITY, CA 94404-1146

Direct Inquiries to:
800-395-DERM
650-358-0100
email: productinfo@penederm.com

**ACTICIN™**
[act' ĭ cĭn]
**(permethrin) Cream 5%**

**DESCRIPTION**

Acticin™ (permethrin) Cream 5% is a topical scabicidal agent for the treatment of infestation with *Sarcoptes scabiei* (scabies). It is available in an off-white, vanishing cream base. Acticin™ Cream is for topical use only.

**Chemical Name:** The permethrin used is an approximate 1:3 mixture of the cis and trans isomers of the pyrethroid (±)-3-phenoxybenzyl 3-(2,2-dichlorovinyl)-2,2-dimethylcyclopropanecarboxylate. Permethrin has a molecular formula of $C_{21}H_{20}Cl_2O_3$ and a molecular weight of 391.29. It is a yellow to light orange-brown, low melting solid or viscous liquid.

[See chemical structure at top of next column]

Each gram of Acticin™ Cream 5% contains permethrin 50 mg (5%) and the inactive ingredients butylated hydroxytoluene, carbomer 934P, coconut oil, glycerin, glyceryl stearate, isopropyl myristate, lanolin alcohols, light mineral oil, polyoxyethylene cetyl ethers, purified water, and sodium hydroxide. Formaldehyde 1 mg (0.1%) is added as a preservative.

**CLINICAL PHARMACOLOGY**

Permethrin, a pyrethroid, is active against a broad range of arthropods including lice, ticks, fleas, mites, and other arthropods. It acts on the nerve cell membrane to disrupt the sodium channel current by which the polarization of the membrane is regulated. Delayed repolarization and paralysis of the pests are the consequences of this disturbance.

Permethrin is rapidly metabolized by ester hydrolysis to inactive metabolites which are excreted primarily in the urine. Although the amount of permethrin absorbed after a single application of the 5% cream has not been determined accurately, data from studies with $^{14}$C-labeled permethrin and absorption studies of the cream applied to patients with moderate to severe scabies indicate it is 2% or less of the amount applied.

**INDICATIONS AND USAGE**

Acticin™ Cream 5% is indicated for the treatment of infestation with *Sarcoptes scabiei* (scabies).

**CONTRAINDICATIONS**

Permethrin cream is contraindicated in patients with known hypersensitivity to any of its components, to any other synthetic pyrethroid or pyrethrin.

**WARNINGS**

If hypersensitivity to permethrin cream occurs, discontinue use.

**PRECAUTIONS**

**General:** Scabies infestation is often accompanied by pruritus, edema and erythema. Treatment with permethrin cream may temporarily exacerbate these conditions.

**Information for Patients:** Patients with scabies should be told that itching, mild burning and/or stinging may occur after application of permethrin cream. In clinical trials, approximately 75% of patients treated with permethrin cream who continued to manifest pruritis at 2 weeks had resolution by 4 weeks. If irritation persists, they should contact their physician. Permethrin cream may be very mildly irritating to the eyes. Patients should be advised to avoid contact with eyes during application and to flush with water immediately if permethrin cream gets in the eyes.

**Carcinogenesis, Mutagenesis, Impairment of Fertility:** Six carcinogenicity bioassays were evaluated with permethrin, three each in rats and mice. No tumorigenicity was seen in the rat studies. However, species-specific increases in pulmonary adenomas, a common benign tumor of mice of high spontaneous background incidence, were seen in the three mouse studies. In one of these studies there was an increased incidence of pulmonary alveolar-cell carcinomas and benign liver adenomas only in female mice when permethrin was given in their food at a concentration of 5000 ppm. Mutagenicity assays, which give useful correlative data for interpreting results from carcinogenicity bioassays in rodents, were negative. Permethrin showed no evidence of mutagenic potential in a battery of *in vitro* and *in vivo* genetic toxicity studies.

Permethrin did not have any adverse effect on reproductive function at a dose of 180 mg/kg/day orally in a three-generation rat study.

**Pregnancy:** *Teratogenic Effects:* Pregnancy Category B: Reproduction studies have been performed in mice, rats, and rabbits (200 to 400 mg/kg/day orally) and have revealed no evidence of impaired fertility or harm to the fetus due to permethrin. There are, however, no adequate and well-controlled studies in pregnant women. Because animal reproduction studies are not always predictive of human response, this drug should be used during pregnancy only if clearly needed.

**Nursing Mothers:** It is not known whether this drug is excreted in human milk. Because many drugs are excreted in human milk and because of the evidence for tumorigenic potential of permethrin in animal studies, consideration should be given to discontinuing nursing temporarily or withholding the drug while the mother is nursing.

**Pediatric Use:** Permethrin cream is safe and effective in pediatric patients two months of age and older. Safety and effectiveness in pediatric patients less than two months of age have not been established.

**ADVERSE REACTIONS**

In clinical trials, generally mild and transient burning and stinging followed application with permethrin cream in 10% of patients and was associated with the severity of infestation. Pruritis was reported in 7% of patients at various times post-application. Erythema, numbness, tingling, and rash were reported in 1 to 2% or less of patients (see PRECAUTIONS: General).

**OVERDOSAGE**

No instance of accidental ingestion of permethrin cream has been reported. If ingested, gastric lavage and general supportive measures should be employed.

**DOSAGE AND ADMINISTRATION**

Adults and children: Thoroughly massage Acticin™ (permethrin) Cream into the skin from the soles of the feet. Scabies rarely infests the scalp of adults, although the hairline, neck, temple, and forehead may be infested in infants and geriatric patients. Usually 30 grams is sufficient for an average adult. The cream should be removed by washing (shower or bath) after 8 to 14 hours. Infants should be treated on the scalp, temple and forehead. ONE APPLICATION IS GENERALLY CURATIVE.

Patients may experience persistent pruritus after treatment. This is rarely a sign of treatment failure and is not an indication for retreatment. Demonstrable living mites after 14 days indicate that retreatment is necessary.

**HOW SUPPLIED**

Acticin™ (permethrin) Cream 5% (wt./wt.) is supplied in 60g tubes.

| NDC Code | Strength | Quantity |
|---|---|---|
| 25074-131-06 | 5% | 60 g |

Store at room temperature 15°–25°C (59°–77°F).

**CAUTION:** Federal (USA) law prohibits dispensing without prescription.

Distributed by: Penederm Incorporated
Foster City, CA 94404

Manufactured by: Alpharma USPD Inc.
Baltimore, MD 21244

PN402.01A
Rev.9/97

VC1350

THE PHYSICIANS
Desk Reference

(3)

# EXHIBIT D

**Health Services**
**Inmate Orientation Handbook**

**Medical**
**Dental**
**Pharmacy**
**Mental Health**

**Institution-specific information will be provided by the institution as an attachment to this handbook**

NI1-010 (English) - Revised 9/02

## A. INTRODUCTION

This handbook is designed to orient you to health services. After reading you will understand sick call, emergency visit procedures, and other health services available to you at this institution. Please make sure that you read this handbook and ask **the medical staff questions on anything that you do not understand.** It is your responsibility to be familiar with the contents of this handbook.

Be aware that you will be provided only one copy of this handbook during your stay at this institution. If you lose it, it will not be replaced. You have signed for your copy and it will be recorded in your property file by number.

Once again, if you do not understand any part of this handbook, **ask the medical staff.**

**Any problems that persist should be reported to medical staff.**

## B. HEALTH CARE OVERVIEW

You will have unimpeded access to health care. The Department of Corrections will provide medical, dental, mental health, and other health-related services to all inmates in custody.

1. Quality and level of care will meet constitutional standards of care.
2. An adequate health screening and assessment will be provided at intake. A complete history and physical exam will be performed every other year if you are under 50 years of age and every year if you are 50 or older.
3. Emergency health services will be available on a 24-hour basis.
4. Elective surgery will be performed when approved by the Office of Health Services.
5. Convalescent care will be provided.
6. Mental health services and dental services will be available.
7. Health education will be provided.
8. Access to emergency care will not be delayed if an emergency is declared by you. Each declared emergency will be evaluated by the health staff and the appropriate health care services will be provided.

-1-

9. Part of each institution's orientation program that is presented by health staff will include a verbal briefing on how to request care, maintain personal hygiene, report communicable diseases, and get special care information.

10. Written instructions regarding use of health services will include how to get medical attention.

11. You cannot be punished or threatened to be punished for requesting attention or care, or for declaring a medical or mental health emergency.

C. MEDICAL CALL OUTS

The medical unit utilizes the Monday-Friday call-out procedure to schedule all nonemergency medical appointments for the doctors, nursing, dental, and mental health. The call out will list your name, DC number, location, and time of your appointment. The call out is posted daily in the dormitory, and it is your responsibility to read it each day. If you need assistance in reading the call out, ask your dormitory officer for help. You should arrive for your scheduled appointment approximately 15 minutes early. Failure to report to your medical call out may result in disciplinary action being taken against you.

D. INMATE CO-PAYMENT

1. All nonemergency health care visits which you ask for will require a co-payment (see instructions/information sheet which is posted in dorms and health services areas). This means that if you ask for a visit to medical, mental health, or dental, you will be required to pay a co-payment fee.

2. You will not be denied access to care for lack of ability to meet the co-payment fee.

3. There will be no charge for emergency visits. However, when you declare an emergency, a determination will be made as to whether or not it is a true emergency. If it is determined not to be a true emergency, a co-payment will be charged.

4. Your care will be the same even if you cannot pay the co-payment.

-2-

**Waivers of co-payment fees will be made under the following circumstances:**

5. Extraordinary events that could not be predicted, like a disturbance or a natural disaster.

6. Health care visits that are provided under a contract with the Interstate Corrections Compact or under an agreement with another jurisdiction that prohibits such a co-payment.

7. Health care visits ordered by a health care provider and which consist of routine follow-up care ordered by a health care provider for a previously diagnosed condition.

8. An institution-wide health care measure that is necessary to address the spread of specific infectious or contagious diseases.

E. HEALTH EDUCATION

It is in your best interest to be aware of your health status and to have an active role in your health care. The health education program is designed to provide you with some basic knowledge of the following:

1. Recognizing Symptoms of Illness:

Our bodies provide us with an early warning system that all is not well. When you begin to notice unusual things happening in your body, it is in your best interest to be checked. Some early and obvious symptoms include fever and nausea. More serious symptoms include severely high temperature, blood in the urine, coughing up blood, difficulty in breathing, severe vomiting with stomach cramps, and sharp pains around the heart. These conditions require medical attention.

2. Communicable Diseases:

Some diseases (like chickenpox and tuberculosis) are spread through the air. If the germs of these infections are in the air and you breathe them