UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NICHOLAS V. CICCONE,

                Plaintiff,

v.                             Case No. 3:06-cv-116-J-32MMH

J. SAPP, et al.,

                Defendants.

_____

**ORDER**

**I. Status**

On February 6, 2006, Plaintiff Nicholas V. Ciccone, an inmate of the Florida penal system proceeding *pro se* and *in forma pauperis*, initiated this action by filing a Civil Rights Complaint Form (Doc. #1) (hereinafter Complaint) and Memorandum of Law pursuant to 42 U.S.C. § 1983. He names seven Defendants in this action: (1) J. Sapp, the Warden at Hamilton Correctional Institution in Jasper, Florida; (2) R. Solorzano, the Chief Health Officer at Hamilton Correctional Institution; (3) R. Feltner, the Senior Health Administrator at Hamilton Correctional Institution; (4) D. Hall, a staff physician at Hamilton Correctional

Institution; (5) M. Delacerna, a staff physician at Hamilton Correctional Institution; (6) J. Zak, a nurse at Hamilton Correctional Institution; and, (7) C. Hudgins, a nurse at Hamilton Correctional Institution. Plaintiff claims that the Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Specifically, he claims that they did not provide adequate medical treatment for his skin disease known as scabies.

Before the Court are the following dispositive motions: Defendant Delacerna's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. #18) and Defendants Sapp, Zak, Solorzano and Feltner's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. #14). In support of their motions for summary judgment and for dismissal of the Complaint, Defendants have submitted exhibits. Plaintiff has been instructed on how to respond to motions for summary judgment and has been given sufficient time in which to respond. See Court's Orders (Docs. #4, #23). Plaintiff has properly responded. See Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss/Summary Judgment (Doc. #15); Plaintiff's Brief in

Opposition to Defendant Delacerna's Motion to Dismiss/Summary Judgment (Doc. #24).

Plaintiff has notified this Court that Defendant Hudgins passed away. See Plaintiff's Notice to the Court (Doc. #13), filed April 20, 2006. Therefore, Defendant C. Hudgins will be dismissed from this action pursuant to Fed. R. Civ. P. 25(a).

## II. Plaintiff's Allegations and Claims

In February of 2005, Plaintiff contracted a contagious skin disease known as scabies. Complaint at 8. On February 24, 2005, Plaintiff declared a medical emergency and was seen by Defendant Hudgins, a nurse. Id.; Memorandum of Law at 2. Plaintiff informed Defendant Hudgins that he was severely itching on his hands, feet, groin, mid-section and buttocks. Memorandum of Law at 2. Defendants Hudgins told Plaintiff to sign up for sick call. Id. On February 27, 2005, Plaintiff signed up for sick call and was seen by Defendant Zak. Id. Defendant Zak was not convinced that Plaintiff had scabies, gave Plaintiff hydrocortisone cream and told Plaintiff he could report back to sick call in seven to ten days if the condition continued. Id. at 3. On March 2, 2005, Plaintiff reported back to the medical clinic and was seen by Nurse Holmes, who diagnosed Plaintiff with scabies and referred Plaintiff to Defendant Hall. Id.

- 3 -

On March 3, 2005, Plaintiff was seen by Defendant Hall, a staff physician, and was treated for the skin disease; however, Plaintiff claims that the medication (permethrin) was not effective. Id. at 3-4; Complaint at 8. On March 5, 2005, Plaintiff reported back to the medical clinic and was seen by Defendant Zak, who referred Plaintiff back to Defendant Hall. Memorandum of Law at 4; Complaint at 9. Plaintiff reported back to sick call again on March 13, 2005, and was seen by Defendant Zak. Memorandum of Law at 4. On March 15, 2005, Plaintiff was sent to the medical clinic by Lieutenant Herring because other inmates were complaining about Plaintiff's being in open population covered with scabs and sores, but Plaintiff was not seen by Defendant Hudgins. Memorandum of Law at 5.

On March 17, 2005, Plaintiff reported to the medical clinic via a call out to see Defendant Hall. Id. Plaintiff's condition was so aggravated that it was affecting his nervous system, which caused extreme stress and triggered a reoccurrence of herpes that had been in remission since 1990. Id. Plaintiff was given valtrex for the herpes, but was told by Defendant Hall that he could not be treated again so soon for scabies. Id. Defendant Hall stated, "You will have to wait 2 months because the cream [permethrin] is toxic and can kill you." Id.

- 4 -

Between March 17, 2005, and May 26, 2005, Plaintiff reported to the medical clinic for sick call six times. Id. at 6. Most of the visits were with Defendant Zak. Id. There were several other occasions when Plaintiff was sent to the medical clinic by Captain Baker, Captain Mann, Sergeant Allen and Officer Voyles; however, the medical personnel repeatedly sent him away "doing absolutely nothing." Id.

On April 27, 2005, Nurse Sistrunk referred Plaintiff to the mental health department because Plaintiff was in a state of confusion due to lack of sleep since he was lying awake at night "crying and shaking and practically digging through his skin." Id. On May 8, 2005, Plaintiff reported back to sick call and was seen by Defendant Zak, who referred Plaintiff to the staff physician. Id. at 7. Plaintiff reported back to sick call on May 19, 22 and 24 because he still had not seen the staff physician. Id. The medical personnel claimed they were backlogged. Id.

Plaintiff's father then called the Hamilton County Health Department, and two days later on May 26, 2005, Plaintiff was treated. Id.; Complaint at 10. His scabies was cured, and his herpes went back into remission a few days later. Memorandum of Law at 7.

Plaintiff acknowledges that there were sixteen reported visits to the medical clinic as well as several undocumented times the security staff sent him to the medical clinic. <u>Id</u>. at 10. Plaintiff concludes that he was first seen on February 24, 2005, and was not properly treated until May 26, 2005, which is twelve weeks later. <u>Id</u>. at 7; Complaint at 9.

### III. Exhaustion

Exhaustion of available administrative remedies is required before a 42 U.S.C. § 1983 action with respect to prison conditions by a prisoner may be initiated in this Court. The Eleventh Circuit recently stated:

> Before considering the merits of this case, we must address a threshold matter. According to 42 U.S.C. § 1997e(a), enacted as part of the Prison Litigation Reform Act (the "PLRA"),
>
> > No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
>
> The PLRA's effective date was April 26, 1996; because the prisoners filed their complaint after this date, the PLRA applies. <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1260 (11th Cir. 2000). A district court must dismiss the suit when it finds that the plaintiff-inmate has not exhausted his

- 6 -

> administrative remedies.  Cf. Brown v. Sikes,
> 212 F.3d 1205, 1207 (11th Cir. 2000). . . .

Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004).

Plaintiff has provided the Court with several exhibits to support his assertion that he has sufficiently exhausted the claims presented to this Court.  This Court concludes that Plaintiff Ciccone has sufficiently exhausted his administrative grievance remedies with respect to the named Defendants.  The grievances submitted by Plaintiff are sufficient to show exhaustion of the medical issue presented to this Court.

### IV. Summary Judgment Standard

With respect to the standard for granting summary judgment, the Eleventh Circuit Court of Appeals has stated:

> [S]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In re Optical Technologies, Inc., 246 F.3d 1332, 1334 (11th Cir. 2001).

The parties' respective burdens and the Court's responsibilities are outlined as follows:

- 7 -

The party seeking summary judgment bears the initial burden to demonstrate to the district court the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact. Taylor v. Espy, 816 F.Supp. 1553, 1556 (N.D. Ga. 1993) (citation omitted). In assessing whether the movant has met this burden, the district court must review the evidence and all factual inferences drawn therefrom, in the light most favorable to the non-moving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exist genuine issues of material fact. Matsushita Electric Industrial Co. v. Zenith Radio Corp.[,] 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Applicable substantive law will identify those facts that are material. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. Id. For factual issues to be considered genuine, they must have a real basis in the record. Matsushita, 475 U.S. at 586-87, 106 S.Ct. at 1355-56. It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. Anderson, 477 U.S. at 249, 106 S.Ct. at 2135. The Court must avoid weighing conflicting evidence or making credibility determinations. Id. at 255, 106 S.Ct. at

> 2513-14.  Instead, "[t]he evidence of the non-
> movant is to be believed, and all justifiable
> inferences are to be drawn in his favor."  Id.
> Where a reasonable fact finder may "draw more
> than one inference from the facts, and that
> inference creates a general issue of material
> fact, then the court should refuse to grant
> summary judgment."  Barfield v. Brierton, 883
> F.2d 923, 933-34 (11th Cir. 1989) (citation
> omitted).

Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918-19 (11th Cir.

1993); see Mulhall v. Advance Sec. Inc., 19 F.3d 586, 589-90 (11th

Cir.), cert. denied, 513 U.S. 919 (1994).

"It is true that on a motion for summary judgment, all

reasonable inferences must be made in favor of the non-moving

party."  Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962,

970 (11th Cir. 2002) (citation omitted).  "A court need not permit

a case to go to a jury, however, when the inferences that are drawn

from the evidence, and upon which the non-movant relies, are

'implausible.'"  Id. (citations omitted).

> If a reasonable jury could not find in favor
> of the nonmoving party, no genuine issue of
> material fact does exist; and summary judgment
> is proper.  Beal v. Paramount Pictures Corp.,
> 20 F.3d 454, 459 (11th Cir. 1994).  A mere
> scintilla of evidence in support of the
> nonmoving party will not suffice to overcome a
> motion for summary judgment.  Allen v. Tyson
> Foods, Inc., 121 F.3d 642, 646 (11th Cir.
> 1997).  As Fed.R.Civ.P. 56(e) states, "When a
> motion for summary judgment is made and
> supported as provided in this rule, an adverse
> party may not rest upon the mere allegations

> or denials of the adverse party's pleading,
> but the adverse party's response, by
> affidavits or as otherwise provided in this
> rule, must set forth specific facts showing
> that there is a genuine issue for trial."

<u>Young v. City of Palm Bay, Fla.</u>, 358 F.3d 859, 860 (11th Cir. 2004). Thus, "[s]ummary judgment should be granted when, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." <u>Nolen v. Boca Raton Community Hospital, Inc.</u>, 373 F.3d 1151, 1154 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)).

## V. Cruel and Unusual Punishment

In any 42 U.S.C. § 1983 cause of action, the initial inquiry must focus on whether the two essential elements to a section 1983 action are present.

> A successful section 1983 action requires a
> showing that the conduct complained of (1) was
> committed by a person acting under color of
> state law and (2) deprived the complainant of
> rights, privileges, or immunities secured by
> the Constitution or laws of the United States.

<u>Harvey v. Harvey</u>, 949 F.2d 1127, 1130 (11th Cir. 1992); <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579 (11th Cir. 1995).

With regard to Plaintiff's claim of being subjected to cruel and unusual punishment in violation of the Eighth Amendment, the Eleventh Circuit has stated:

- 10 -

Although the United States Constitution does not require comfortable prisons, neither does it permit inhumane ones. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined." <u>Helling v. McKinney</u>, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).  However, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." <u>Whitley v. Albers</u>, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).  "After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." <u>Ingraham v. Wright</u>, 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations omitted)).

<u>Farrow v. West</u>, 320 F.3d 1235, 1242-43 (11th Cir. 2003).

With reference to the denial of medical care, the Eleventh Circuit further explained:

In <u>Estelle v. Gamble</u>, the Supreme Court held that a prison official's "deliberate indifference to [the] serious medical needs of [a] prisoner[ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 104, 97 S.Ct. 285 (quotation marks and citation omitted); <u>see</u> <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1363 (11th Cir. 1999).  "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" <u>McElligott v. Foley</u>, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted); <u>see</u> <u>Estelle</u>, 429 U.S. at 106, 97 S.Ct. 285 ("Medical

- 11 -

malpractice does not become a constitutional violation merely because the victim is a prisoner."). The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 105-06, 97 S.Ct. 285.

To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995). First, a plaintiff must set forth evidence of an objectively serious medical need. Taylor, 221 F.3d at 1258; Adams, 61 F.3d at 1543. Second, a plaintiff must prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need. Farmer, 511 U.S. at 834, 114 S.Ct. 1970; McElligott, 182 F.3d at 1254; Campbell, 169 F.3d at 1363.

Farrow, 320 F.3d at 1243.

When describing a serious medical need, the Eleventh Circuit

stated:

In our circuit, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted). In either of these situations, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" Taylor, 221 F.3d at 1258 (alteration in original) (quoting Farmer, 511 U.S. at 834, 114 S.Ct. 1970). Our precedent recognizes a

- 12 -

range of medical needs that are sufficiently serious to constitute "serious medical needs" for purposes of the Eighth Amendment and some medical needs that are not.

Farrow, 320 F.3d at 1243 (footnotes omitted).

The Eleventh Circuit, when addressing a claim of deliberate indifference to a serious medical need, has succinctly captured the state of the law with respect to what actually constitutes deliberate indifference:

In Estelle, the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, 97 S.Ct. 285; Farmer, 511 U.S. at 835, 114 S.Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

> This Court has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence." For instance, we have stated that "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir. 1997). Alternatively, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott, 182 F.3d at 1255. For example, a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference. Hill, 40 F.3d at 1190 n. 26; H. C. by Hewett v. Jarrad, 786 F.2d 1080, 1086 (11th Cir. 1986) (citing Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985)).

Farrow, 320 F.3d at 1245-46.

Thus, a plaintiff must prove, in order to show a sufficiently serious deprivation made with the subjective intent to punish, that a defendant had "knowledge of a serious medical risk and a disregard of that risk by conduct that is more than mere negligence." Flowers v. Bennett, 135 F.Supp.2d 1150, 1154 (N.D. Ala. 2000) (citations omitted). Wanton conduct can be "treatment 'so cursory as to amount to no treatment at all[,]'" Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000) (citing Ancata v.

- 14 -

<u>Prison Health Servs., Inc.</u>, 769 F.2d 700, 704 (11th Cir. 1985)),
<u>cert</u>. <u>denied</u>, 531 U.S. 1077 (2001), or delay when it is apparent
that delay would exacerbate the medical condition, it does so, and
the delay is not medically justified.  <u>Id</u>. (citing <u>Hill v. Dekalb</u>
<u>Regional Youth Detention Center</u>, 40 F.3d 1176, 1187, 1187-89 (11th
Cir. 1994)).

## VI. Facts and Conclusions of Law

The record clearly demonstrates that Plaintiff was seen
routinely by either the named Defendants or other medical personnel
employed by the Florida Department of Corrections and that he was
treated for his complaints about his skin rashes.  The medical
records and grievances show that the medical staff adequately
addressed his ongoing complaints about his skin rashes and treated
his continuing medical issues.

The medical records submitted by Defendants and Plaintiff
reflect the following medical care given to Plaintiff during the
relevant time period for his skin condition.  <u>See</u> Complaint,
attached Plaintiff's Exhibits; Defendants' Motion to Dismiss or, in
the Alternative, Motion for Summary Judgment (Doc. #14), attached
Defendants' Exhibits.  The relevant chronology is as follows.

On February 24, 2005, Plaintiff declared a medical emergency,
complaining about the severe itching on his hands, feet, groin,

mid-section and buttocks; he was seen by Defendant Hudgins. Memorandum of Law at 2; Plaintiff's Exhibit A, Chronological Record of Health Care.  The medical entry states: "declined medical emergency. states will sign up for sick call."  Plaintiff states that Defendant Hudgins informed him, "you might as well sign up for sick call because if your [sic] declaring a medical emergency I'm just gonna charge you four dollars and tell you to sign up anyway." Complaint at 2.[1]

On February 27, 2005, Plaintiff signed up for sick call and was seen by Defendant Zak.  Id.  Plaintiff informed Defendant Zak that he believed he had scabies.  Id. at 2-3.  Defendant Zak treated Plaintiff with a hydrocortisone cream and told Plaintiff to return to the medical clinic in seven to ten days.  Id. at 3; Plaintiff's Exhibit A, Rash Assessment, dated February 27, 2005; Defendants' Exhibit B-1.  The location of the rash was the back, chest, lower legs and abdomen and was described as red and flat with no bleeding or swelling.  Plaintiff's Exhibit A.  There was no respiratory distress.  Id.

---

[1] Plaintiff grieved the assessment of four dollars, and the Department responded that: "All inmate self-initiated sick call visits that are determined to be of a non-emergent nature will incur a $4.00 co-payment."  Complaint, attached exhibit, Response to Request for Administrative Remedy or Appeal, dated June 28, 2005.

On March 2, 2005, Plaintiff reported back to the medical clinic, complaining that the itching in the mid-section was worsening. Memorandum of Law at 3. He saw Nurse Holmes, who noted that the rash was red and had been noticed two weeks ago, gave him benadryl and then referred him to the staff physician for the next day to "rule out scabies." Plaintiff's Exhibit A, Rash Assessment, dated March 2, 2005; Defendants' Exhibit B-2.

On March 3, 2005, Plaintiff saw Defendant Hall, a staff physician, who gave Plaintiff permethrin for the treatment of scabies. The medical record entry for March 3, 2005, is as follows:

> (S) [Subjective] I have scabies, and I itch all over.
>
> (O) [Objective] Rash on lateral sides, inner thighs and lower abd[omen] and 3-4 spots noted on back.
>
> (A) [Assessment] Scabies.
>
> (P) [Plan] Scabies treatment protocol - (1) permethrin cream.  Apply to entire body and leave on 8-14 hours, (2) RID (permethrin spray) to be sprayed on all bed clothes and personal linens, (3) give 2 sets clean clothes, clean linens, blankets and jackets and hats, (4) shower and wash off permethrin cream 8-14 hours.

Defendants' Exhibit A-1; Plaintiff's Exhibit A, Chronological Record of Health Care, dated March 3, 2005; Defendants' Exhibit C-1, Physician's Order Sheet, dated March 3, 2005.

On March 5, 2005, Plaintiff reported back to the medical clinic and was seen by Defendant Zak and informed him that his condition was still the same. Memorandum of Law at 4; Plaintiff's Exhibit A, Rash Assessment, dated March 5, 2005. Defendant Zak instructed Plaintiff on skin care and gave him hydrocortisone cream. Plaintiff's Exhibit A, Rash Assessment, dated March 5, 2005; Defendants' Exhibit B-3. On March 13, 2005, Plaintiff reported back to the medical clinic and was seen again by Defendant Zak, who did acknowledge in the rash assessment that Plaintiff had requested an appointment with a medical doctor at his March 5, 2005, appointment. Plaintiff's Exhibit A, Rash Assessment, dated March 13, 2005; Defendants' Exhibit B-4.

On March 15 and 16, 2005, Plaintiff inquired about his requested appointment with a medical doctor, and Plaintiff was informed that he would see a medical doctor "soon," but that he could sign up for sick call if he needed medical assistance prior to the medical doctor appointment. Plaintiff's Exhibit A, Chronological Record of Health Care, dated March 15 and 16, 2005.

On March 17, 2005, Plaintiff reported to the medical clinic via a call out to see Defendant Hall, a staff physician. Memorandum of Law at 5.  The medical record entry is as follows:

> S) [Subjective] I still itch after treatment for scabies on 3-4-05.  I also itch on my penis.
>
> (O) [Objective] Herpes genitalis.  Aftermath itch of scabies.
>
> (A)  [Assessment]  Post  scabies  treatment. Herpes genitalis.
>
> (P) [Plan] Given Rx CTM 8mg. tab[let] T S 8h x 15 d.  Rx Valtrex 500mg. tab[let] T po [by mouth] Otid x 7 d.

Defendants' Exhibit A-2; Plaintiff's Exhibit A, Chronological Record of Health Care, dated March 17, 2005; Defendants' Exhibit C-1, Physician's Order Sheet, dated March 17, 2005.

On April 27, 2005, Plaintiff complained that he itched all over his body.  Defendants' Exhibit A-3; Plaintiff's Exhibit A, Chronological Record of Health Care, dated April 27, 2005.  Nurse Sistrunk referred Plaintiff to the mental health department because Plaintiff "was in a state of confusion" from lack of sleep due to the itching at night.  Memorandum of Law at 6.

On May 6, 2005, Plaintiff reported back to sick call and was seen by Defendant Zak for a rash on his penis and scrotum. Plaintiff's Exhibit A, Rash Assessment, dated May 6, 2005;

- 19 -

Defendants' Exhibit B-5.  On May 8, 2005, Plaintiff reported back to sick call and was seen by Defendant Zak for a rash on his trunk and arms that was described by Defendant Zak as red and dry. Plaintiff's Exhibit A, Rash Assessment, dated May 8, 2005; Defendants' Exhibit B-6.

Plaintiff was again seen in sick call on May 19, 2005, May 22, 2005, and May 24, 2005.  Plaintiff's Exhibit A, Chronological Record of Health Care, dated May 19, 2005, and May 24, 2005; Plaintiff's Exhibit A, Rash Assessment, dated May 22, 2005; Defendants' Exhibit B-7.  On May 24, 2005, the medical entry read as follows:

> I/E Re: note 5-19-05.
> Scabies medication permethrin should not be refilled more often than e[very] 2 months. Itching may continue for up to 8 weeks after treatment.  Must come in for Valtrex.

Defendants' Exhibit A-5; Plaintiff's Exhibit A, Chronological Record of Health Care, dated May 24, 2005.

On May 26, 2005, Plaintiff was seen in the medical clinic by Defendant Hall, a staff physician.  Memorandum of Law at 7; Defendants' Exhibit A-4; Plaintiff's Exhibit A, Chronological Record of Health Care, dated May 26, 2005.  The medical record entry reads as follows:

> (S) [Subjective] Rash on body and especially interdigital spaces.

- 20 -

> (O) [Objective] Classic scabies - groin - red
> papules and vessicles of herpes genitalis.
>
> (A) [Assessment] Scabies - herpes genitalis.
>
> (P) [Plan] Permethrin treatment. Rx Valtrex
> 500 mg. tab T tid x 10 d.

Id.

First, this Court must determine whether Plaintiff's medical needs were "serious" medical needs. A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994) (citation omitted). In either of these situations, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" Taylor, 221 F.3d at 1258 (alteration in original) (quoting Farmer, 511 U.S. at 834).

Even assuming, without deciding, that Plaintiff has demonstrated a sufficiently serious medical need, the Defendants were not deliberately indifferent to any "serious" medical needs. Quite to the contrary, the chronology of his medical evaluations and treatments reflects that the Defendants were concerned about Plaintiff's rash and responded to his complaints in a timely and appropriate fashion. While Plaintiff's complaints were ongoing,

the Defendants were also responding with continuing treatments that seem to address his medical concerns.  While it is unfortunate that any inmate would have such continuing medical complaints concerning continuing skin rashes on such a multitude of occasions for resolution by the medical staff, the record reflects that the Defendants were responsive and timely when addressing Plaintiff's skin rash.

Further, while Plaintiff may disagree with many of the decisions made by the Defendants with respect to his complaints, it is clear that "a difference of opinion over matters of medical judgment does not give rise to a constitutional claim." Tedesco v. Johnson, 119 F.Supp.2d 1320, 1327 (M.D. Fla. 2000) (citing Massey v. Hutto, 545 F.2d 45 (8th Cir. 1976)).  Finally, a complaint that a physician or medical technician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Estelle, 429 U.S. at 106.

Finally, it appears that Plaintiff also alleges that the Defendants unjustly denied his inmate grievances concerning his medical concerns.[2]  Based on the record before this Court, this

---

[2] Plaintiff filed several grievances concerning his medical issues, and the grievances were denied.  Memorandum of Law at 7. He claims that Defendants Warden Sapp, Chief Health Officer

Court is of the opinion that Plaintiff's federal constitutional rights were not violated by Defendants' denial of the grievances. As previously noted, the Defendants provided adequate and timely medical care to Plaintiff for his skin rash.

This Court does not doubt the extreme discomfort allegedly suffered by Plaintiff while he awaited a diagnosis of his condition. It is most unfortunate that Plaintiff is not satisfied with the medical care that has been provided; however, it is clear that Plaintiff has access to the inmate grievance procedures available at the penal institution and that he may continue to address his complaints and seek medical attention for his medical concerns. Plaintiff was "encouraged to cooperate with [the] health care staff by following the treatment regimen prescribed." Complaint, attached exhibit, Response to Request for Administrative Remedy or Appeal, dated June 28, 2005.

Finally, with respect to Defendant D. Hall, this Court has had difficulty with service of process. Initially, service of process was returned unexecuted because Defendant Hall retired. <u>See</u> Unexecuted Return of Service (Doc. #11). Thereafter, this Court redirected service of process upon him at the address that was

---

Solorzano and Senior Health Administrator R. Feltner reviewed and signed the grievances and chose to ignore Plaintiff's concerns. <u>Id</u>.

provided to the Court *in camera*. Florida Department of Corrections' Confidential Information Provided for *In Camera* Inspection (Doc. #S-1), filed July 25, 2006; *In Camera* Order Redirecting Service of Process (Doc. #S-2), filed July 28, 2006. On August 16, 2006, service of process was again returned unexecuted against Defendant Hall, and the deputy Marshal who attempted service was informed that Defendant Hall is shortly leaving for duty in Iraq. Unexecuted Return of Service (Doc. #S-3). This Court now concludes that it is unnecessary to serve Defendant D. Hall and require him to respond to Plaintiff's claims since the claims against him would necessarily be resolved the same as the claims against the other Defendants. For this reason, Plaintiff's claims against Defendant D. Hall will be dismissed.

Therefore, for the above-stated reasons, Defendant Delacerna's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. #18) and Defendants Sapp, Zak, Solorzano and Feltner's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. #14) will be granted.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    Defendant C. Hudgins is **DISMISSED** from this action pursuant to Fed. R. Civ. P. 25(a).  <u>See</u> Plaintiff's Notice to the Court (Doc. #13), filed  April 20, 2006.

2.    Defendant Delacerna's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. #18) and Defendants Sapp, Zak, Solorzano and Feltner's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. #14) are **GRANTED**.

3.    Plaintiff's claims against Defendant D. Hall are **DISMISSED** with prejudice.

4.    The Clerk shall enter judgment in favor of the Defendants and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of August, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

- 25 -

```
sc 8/30
c:
Nicholas V. Ciccone
Ass't Attorney General (Belitzky)
Defendant D. Hall (in camera address)
```